**Christopher Dale O'BANNON and Justin Bradley O'Bannon by and through their Next Friend Sharon Michelle O'Bannon, et al., Plaintiffs,**

v.

**UNION PACIFIC RAILROAD COMPANY and National Railroad Passenger Corporation (d/b/a Amtrak), Defendants.**

No. 96–0075–CV–W–1.

United States District Court, W.D. Missouri, Western Division.

April 8, 1997.

James D. Walker, Jr., Kansas City, MO, for plaintiffs.

Theodore J. Williams, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Pending before the Court are two motions: (1) Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and (2) Plaintiffs' motion to strike portions of an affidavit included in Defendants' summary judgment brief pursuant to Federal Rule of Civil Procedure 12(f).

### I. Factual Background

This is a wrongful death action arising out of a collision between a vehicle driven by Kevin O'Bannon and an Amtrak passenger train. The action is brought by O'Bannon's surviving children, father, and mother. O'Bannon was fatally injured on September 23, 1995 when he drove into the path of an eastbound Amtrak passenger train at the Sellers Road crossing just east of Sedalia, Missouri. The railroad tracks at the Sellers Road crossing are owned by Union Pacific.

Plaintiffs allege that Defendant Union Pacific was negligent for two reasons: (1) Union Pacific negligently failed to have adequate warning devices at the Sellers Road crossing and (2) Union Pacific negligently maintained and constructed the Sellers Road crossing. Plaintiffs allege that Defendant

Amtrak negligently failed to slacken its speed when approaching the crossing.[1]

Plaintiffs' claims against Union Pacific for inadequate warning devices, neglectful maintenance, and dangerous crossing design are premised on the following factual allegations. They allege that the only warning device located at the north side of the Sellers Road crossing was an unlit crossbuck sign[2] and a round railroad sign, but no stop sign. No electronic signaling devices, such as flashing lights, gates, or crossbars, were present. Plaintiffs further allege that a motorist's view down the tracks, when entering the Seller's Road crossing from the north, is obscured by the combination of the angle of convergence of the crossing; the crossing's excessively steep grade; and brush, trees, and other vegetation in the railroad track right-of-way. Pl.Compl. at 3, ¶ 10.

Against Amtrack, Plaintiffs' claim that Amtrack knew or by the exercise of the highest degree of care could have known that a collision with a motorist entering the crossing from the north was reasonably likely due to the motorist's obstructed view. Consequently, Plaintiffs claim, the Amtrack train should have stopped, slackened speed, or slackened speed and sounded a warning. Compl. at 7, ¶¶ 20(e) & (f).

## II. Standard for Summary Judgment

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). The facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1355–58, 89 L.Ed.2d 538 (1986).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Lower Brule Sioux Tribe v. State of S.D.,* 104 F.3d 1017, 1021 (8th Cir.1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. *Id.* Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. *Id.* Rather, "the disputes must be outcome determinative under prevailing law." *Id.* (citation omitted). Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Demanding more than a metaphysical doubt respects the proper role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Preemption

Defendants' motion for summary judgment asserts that state and federal law preempt all of Plaintiffs' state common law theories of negligence. Plaintiffs oppose the motion on two grounds: (1) Kurt Anderson's affidavit, which supports Defendants' motion for summary judgment, is flawed and cannot be considered by the Court and (2) material issues of fact remain to determine whether their claims are preempted.

### A. General Principles of Preemption

In general, state laws suffer preemption if a federal declaration expressly preempts them, if they conflict with a federal declaration, or if the scope of a statute indicates that Congress intended federal law to

---

1. Plaintiffs conceded that any excessive speed claim against Amtrak would be preempted by 49 C.F.R. § 213.9(a). *See* Pl.Br. at 6–7. Therefore, the Court will not address that issue.

2. Crossbucks, the X-shaped signs spelling out "RAILROAD CROSSING," are warning devices that face oncoming traffic. *Elrod v. Burlington N. R.R. Co.,* 68 F.3d 241, 242 n. 2 (8th Cir.1995).

occupy a field exclusively. *Freightliner Corp. v. Myrick,* 514 U.S. 280, ——, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995); *Flanagan v. Germania,* 872 F.2d 231, 233–34 (8th Cir.1989). The text and structure of a statute are the guideposts in determining whether Congress has manifested a clear purpose to preempt an area of state law. *Peters v. Union Pacific R.R. Co.,* 80 F.3d 257, 261 (8th Cir.1996). Consequently, "[i]f the statute contains an express preemption clause, then the statutory construction should center on its plain meaning as the best evidence of Congress's preemptive intent." *Id.; see also Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (discussing the effect of an express preemption clause).

### B. Preemptive Force of the Federal Railroad Safety Act

The preemption issue in this case turns on the preemptive effect of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 to 21311.[3] Congress enacted the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety ..." 49 U.S.C. § 20103(a).

 The FRSA contains an express preemption clause. *See* 49 U.S.C. § 20106.[4]

Thus, statutory construction must center on its plain meaning as the best evidence of Congress's preemptive intent. *Peters,* 80 F.3d at 261. The preemption clause expresses a preference for national uniformity and, by negative implication, indicates that regulations and orders prescribed by the Secretary will preempt state law relating to the same subject matter. 49 U.S.C. § 20106; *see CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662, 113 S.Ct. 1732, 1736, 123 L.Ed.2d 387, 395 (1993) (discussing preemption under the FRSA); *St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc.,* 39 F.3d 864, 865 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1963, 131 L.Ed.2d 854 (1995). "Legal duties imposed on railroads by the common law fall within the scope of the[ ] broad phrases" of the preemption clause. *Easterwood,* 507 U.S. at 664, 113 S.Ct. at 1738.

The FRSA does not exclusively occupy the field, however. Section 20106's preemption clause also has a savings component: It preserves state law related to railroad safety "until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106. The Supreme Court has determined that Congress' use of the word "covering" in section 20106 indicates that the Secretary's regulation must do more than merely relate to the same subject matter as the state law for the latter to suffer preemption. *Easterwood,* 507 U.S. at 664, 113 S.Ct. at 1738. Instead, the federal

---

**3.** The Federal Railway Safety Act ("FRSA") was previously codified at 45 U.S.C. § 421, *et seq.* On July 5, 1994, Pub.L. No. 103–272, § 7(b), 108 Stat. 1379 (1994), the former version of the FRSA was repealed, amended, and moved to 49 U.S.C. §§ 20101 to 21311. The repeal affects this case because O'Bannon's accident occurred in 1995 and legal proceedings began in 1996. *See id.,* 108 Stat. 1379 (indicating that the repeal has no impact on "proceedings that were begun before the date of the enactment" of Pub.L. 103–272, July 5, 1994). Nonetheless, both parties cited to the repealed version of the statute. However, the recodification of the FRSA was part of its recodification of all "laws related to transportation in one comprehensive title." H.R.Rep. No. 108, 103d Cong., 2d Sess. 3 (1994), *reprinted in* 1994 U.S.C.C.A.N. 818, 820. While the 1994 recodification resulted in certain minor modifications in the language of the FRSA, the modifications did not result in substantive changes to the law. The language modifications

were done merely for the purpose of promoting clarity and consistency. *Id.* ("In making changes in the language, precautions [were] taken against making substantive changes in the law."). Thus, cases interpreting the prior version of the FRSA are applicable to the current version of the FRSA. Consequently, the parties arguments, which are based on law interpreting the prior version of the FRSA, are valid. The Court will substitute the correct statutory provisions where appropriate.

**4.** The relevant portion of 49 U.S.C. § 20106 (formerly 45 U.S.C. § 434) reads as follows: "Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement."

regulations must "substantially subsume the subject matter of the relevant state law." *Id.* 49 U.S.C. § 20106 also includes an express savings clause that further preserves "additional or more stringent" state laws related to railroad safety when the law (1) is necessary to eliminate or reduce an essentially local hazard, (2) is not incompatible with federal law, and (3) does not unreasonably burden interstate commerce. 49 U.S.C. § 20106.

## IV. Inadequate Warning Devices

Plaintiffs first contend that, under Missouri law, Defendant Union Pacific negligently failed to erect adequate warning devices at the Sellers Road crossing. Union Pacific argues that the FRSA and a Missouri statute preempt such a state common law claim. The Court will consider the theories jointly.[5]

■ The federal grade crossing regulations, promulgated by the Secretary of Transportation, provide the starting point for this issue. *See* 23 C.F.R. § 646.214(b)(3) and (4). Under sections 646.214(b)(3) and (4), a project for the improvement of a grade crossing must either include an automatic gate or receive approval from the Federal Highway Administration if federal funds participate in the installation of the warning devices. Thus, when applicable, sections 646.214(b)(3) and (4) displace state and private decision-making authority by establishing a federal-law requirement that certain protective devices be installed or federal approval ob-

tained. *Easterwood,* 507 U.S. at 670, 113 S.Ct. at 1740; *Elrod v. Burlington N. R.R. Co.,* 68 F.3d 241, 243 (8th Cir.1995). In the language of the preemption clause, when the regulation is triggered, it "covers" the same subject matter as a state common law claim targeting the inadequacy of warning devices and, further, no "essentially local hazard" saves the common law claim from preemption.

■ The Eighth Circuit Court of Appeals has determined that the regulations are triggered, and thus preempt common law claims, when (1) federal monies participate in the installation of warning devices,[6] such as crossbuck signs, *Elrod,* 68 F.3d at 243–44, and (2) the warning devices are installed and operating. *Id.* at 244 (citing *Malone Freight Lines,* 39 F.3d at 867).

In this case, Union Pacific contends that, in connection with a federal aid highway project, reflectorized crossbucks signs were installed at grade crossings of city streets and county roads at various locations throughout Missouri where reflectorized crossbucks did not already exist. Def. Br. at 2, ¶ 1. Union Pacific further asserts that the Missouri Highway Commission—in connection with the federal aid highway project—determined that a reflectorized crossbuck was required at the Sellers Road crossing and that federal monies funded its installation at that location. *Id.* at ¶¶ 2 and 3. Accordingly, Union Pacific argues that, be-

---

**5.** Union Pacific argues that, in addition to the FRSA, Mo.Rev.Stat. § 389.610 preempts any common law tort claim of inadequate warning devices. Def. Br. at 8–9; Def. Reply Br. at 13–15; *see* Mo.Rev.Stat. § 389.610.4 (giving the Missouri Department of Economic Development's Division of Transportation "exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and warning devices of each crossing of a public road, street or highway by a railroad."). However, preemption hinges on whether the Division of Transportation exercised jurisdiction over the warning devices at the Sellers Road crossing. *See* discussion *infra* Part IV.A. The issue of jurisdiction, in turn, hinges on whether the Division authorized the installation of reflectorized crossbucks at the Sellers Road crossing and, if so, whether Union Pacific negligently failed to install them. *See id.; see also Moore v. Atchison, Topeka and Santa Fe Ry. Co.,*

966 F.2d 351, 353 n. 4 (8th Cir.1992) (stating that, under Missouri law, a railroad may be held liable for negligence in carrying out a safety directive of the Missouri Department of Transportation). Because these issues are also material to the discussion of preemption under the FRSA, Union Pacific's claim of preemption of Plaintiffs' inadequate warning claim under the FRSA and section 389.610 will be considered jointly.

**6.** The Fifth Circuit has aptly explained the significance of the participation of federal money. *See Hester v. CSX Transp., Inc.,* 61 F.3d 382, 387 (5th Cir.1995) ("The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task.").

cause federal funds were used for the installation of warning devices at the Sellers Road crossing in connection with a federal highway project, Plaintiffs' common law claim alleging that the warning devices were inadequate is preempted. *See* Def. Br. at 8–9 (citing *Easterwood*, 507 U.S. at 670–71, 113 S.Ct. at 1740–41 and *Elrod*, 68 F.3d at 243–44).

Plaintiffs defend their position, arguing that a material issue of fact remains as to whether a reflectorized crossbuck was, in fact, constructed at the Seller's Road crossing using federal money. *See* Pl.Br. at 9–10. They argue that their supporting affidavit of Larry Allan, who resides near the crossing, indicates that the crossbucks at the Sellers Road crossing have been present since well before 1979, which is before federal funding was expended to erect reflectorized crossbucks at specified Missouri locations.

Further, pursuant to Federal Rule of Civil Procedure 12(f), Plaintiffs have filed a motion to strike paragraphs four [7] and five [8] of Kurt Anderson's affidavit. Kurt Anderson is Union Pacific's Senior Manager, Industry and Public Projects. Plaintiffs claim that Anderson's affidavit and the attached exhibits contain foundational defects and inadmissible hearsay. Consequently, they argue that summary judgment is inappropriate because the paragraphs are insufficient to prove the actual construction of crossbucks at the Sellers Road crossing and the allocation and actual expenditure of federal funds at the Sellers Road crossing. Pl.Mot. to Strike at 2.

■ Federal Rule of Civil Procedure 56(e) requires that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters staged therein." Affidavits asserting personal knowledge must include enough factual support to show that the affiant pos-

sesses that knowledge. *El Deeb v. Univ. of Minnesota*, 60 F.3d 423, 428–29 (8th Cir. 1995). Affidavits filed by a party in support of or in opposition to a motion for summary judgment must present evidence. *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949); 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed.1983). Documentary evidence must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. *United States v. Conservation Chem. Co.*, 653 F.Supp. 152, 172 (W.D.Mo.1986); 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (2d ed.1983). In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy the requirements of Rule 56(e). *El Deeb*, 60 F.3d at 429; *see also* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (2d ed.1983) (stating that affidavits are ex parte documents, not subject to cross-examination or evaluation of demeanor, and thus are closely scrutinized). *But see Westborough Mall v. City of Cape Girardeau, Mo.*, 693 F.2d 733, 738 n. 2 (8th Cir.1982) (indicating that some documents—though not strictly meeting the requirements of Rule 56(e)—are sufficiently reliable that they may be relied upon when viewing the record as a whole); *Schibursky v. Int'l Bus. Mach. Corp.*, 820 F.Supp. 1169, 1175 (D.Minn.1993) (admitting documents on a motion for summary judgment despite objections directed at authenticity and hearsay when circumstantial evidence supported the authenticity of the documents and they had a prima facie aura of reliability).

■ In this case, Anderson's assertions in paragraph four fail to comply with Rule 56(e). Paragraph four relies on Exhibit A.2

---

7. Paragraph four reads as follows:

As evidenced by the Pettis County tabulation, attached to this Affidavit as Exhibit 2, the State Highway Commission of Missouri inspected the Sellers Road Crossing in connection with the federal aid highway project and deter-

mined that a reflectorized crossbuck was required at the Sellers Road Crossing.
Def. Br. at 1–2, ¶ 4.

8. Paragraph five reads as follows: "Federal funds participated in the crossbuck installation at the Sellers Road crossing."

for factual support. Exhibit A.2 is a handwritten logsheet filled with unexplained abbreviations. Defendants included the exhibit to demonstrate that crossbucks were erected at the Sellers Road crossing.

Although Exhibit A.2 does not pose hearsay problems, *see* Federal Rule of Evidence 803(6), it poses serious foundational defects. The affidavit fails to explain what Exhibit A.2 is; fails to explain the numerical codes and abbreviations and how Anderson knows their meanings; and fails to state that Anderson knows that the exhibit is genuine. *See Schibursky*, 820 F.Supp. at 1175 (on motion for summary judgment, refusing to consider documents consisting of handwritten notations, the source and date of which were not indicated, and which were not accompanied by affidavit or evidence authenticating them). Consequently, the Court will grant Plaintiffs' motion to strike paragraph four pursuant to Federal Rule of Civil Procedure 12(f).

■ Similarly, in paragraph 5 of his affidavit, Anderson does not indicate how he knows that "federal funds participated in the crossbuck installation at the Sellers Road Crossing." However, Exhibit A.1—which the Court finds sufficiently reliable—buttresses his statement in part. Exhibit A.1 is a copy of an application that the State Highway Commission of Missouri submitted to the Public Service Commission of the State of Missouri requesting permission to install reflectorized crossbucks. Cited within the application and attached to it is a "Contract for Crossbucks" between the Highway Commission and Union Pacific Railroad. The contract indicates that federal funds participated in the installation of reflectorized crossbucks at various locations in Missouri. *See* Ex. A.1 ("the Federal Government has appropriated funds under the Highway Safety Act of 1976 to be used for upgrading warning devices at Railroad grade crossings and ... said funds ... have been assigned to the State Highway Commission of Missouri for administration ..."). Nonetheless, the contract does not specify at which crossings the reflectorized crossbucks will be installed.

Instead, the contract refers to an "attached tabulation of reflectorized crossbucks" that itemizes the locations where the passive warning devices were to be installed and indicates that locations could be added or deleted as the plan proceeded. *See* Ex.A.1, Contract for Crossbucks. Nonetheless, no "attached tabulation" is included in the exhibit. Exhibit 2.A. is the only document offered by Defendants to show that the Sellers Road Crossing was included in the contract to install crossbucks. The flaws with Exhibit 2.A have been examined. Thus, the Court finds that Union Pacific has failed to reliably show that the Sellers Road crossing was included in the contract. Consequently, the Court will grant Plaintiff's motion to strike paragraphs four and five of Anderson's affidavit pursuant to Rule 12(f).

■ It is evident to the Court, however, that Plaintiffs' claims are likely preempted. Efficiency would be better served by giving Defendants an opportunity to cure the affidavit's defects than by proceeding with a jury trial on issues that are likely preempted. *See* Fed.R.Civ.P. 56(e) ("The court may permit affidavits to be supplemented or opposed by ... further affidavits"); *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (stating that the summary judgment procedure is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action"). Consequently, the Court will reserve judgment on Defendants' motion for summary judgment on this issue until Defendant Union Pacific has an opportunity to correct the defects in its affidavits. To obtain summary judgment, Defendant Union Pacific must reliably show through affidavits and authenticated documents that Plaintiffs cannot genuinely dispute that reflectorized crossbucks were installed at the Sellers Road crossing and that federal funds participated in the installation.[9]

## V. Failure to Slacken Speed

Next, Plaintiffs concede that 49 C.F.R. § 213.9(a), which prescribes trains' operating

---

9. Union Pacific may also re-submit affidavits and authenticated documents relating to its claim that Mo.Rev.Stat. § 389.610 preempts Plaintiffs' inadequate warning claims. *See,* discussion *supra* Part II.A. n. 2.

speed limits, would preempt any excessive speed claim against Defendant Amtrack. *See* Pl. Br. at 6–7 (admitting preemption); *see also St. Louis Southwestern Ry. Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir.1995) (preempting a tort action premised on excessive speed). They contend, however, that a common law negligence action against Amtrack for failure to reduce its speed at the Sellers Road crossing remains a viable claim.

▇▇▇ The FRSA is the enabling legislation of 49 C.F.R. § 213.9(a). As discussed above, the FRSA preserves state law until the Secretary of Transportation prescribes a regulation or issues an order "covering" the subject matter. 49 U.S.C. § 20106. But the Secretary's regulatory venture into a field does not reflexively cue preemption. First, the federal regulations must "substantially subsume the subject matter of the relevant state law." *Easterwood*, 507 U.S. at 664, 113 S.Ct. at 1738 (comparing the statutory language "relating to" to "covering" and finding the latter more restrictive). Second, "additional or more stringent" state laws related to railroad safety are preserved when the laws are necessary to eliminate or reduce an essentially local hazard; are not incompatible with federal law; and do not unreasonably burden interstate commerce. 49 U.S.C. § 20106.

▇▇▇ Accordingly, the first inquiry is whether 49 C.F.R. § 213.9(a) "covers" or substantially subsumes a state common law claim alleging that a railroad negligently failed to slacken its speed. Section 213.9 prescribes trains' operating speed limits. Such a regulation substantially subsumes a state common law claim alleging that a rail-

road was negligent in failing to operate at a slower speed under the circumstances.

▇▇▇ The second inquiry, dictated by the FRSA savings clause, is whether the additional or more stringent state law is necessary to eliminate or reduce an essentially local hazard. In *CSX Transportation, Inc. v. Easterwood*, the United States Supreme Court discussed the preemptive effect of the FRSA and its savings clause. Though the Supreme Court found preempted a common law tort action premised on excessive speed, it expressly reserved judgment on preemption of speed-related claims that alleged a duty to avoid a specific, individualized hazard:

> Petitioner is prepared to concede that the preemption of respondent's excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard. As respondent's complaint alleges only that petitioner's train was traveling too quickly given the "time and place," this case does not present, and we do not address, the question of FRSA's pre-emptive effect on such related claims.

*Easterwood*, 507 U.S. at 675 n. 15, 113 S.Ct. at 1743 n. 15. Generally, courts considering this issue have ruled that a "specific individual hazard" must be a discrete and truly local hazard, such as a child standing on the railway.[10] They must be aberrations which the Secretary could not have practically considered when determining train speed limits under the FRSA. *Armstrong*, 844 F.Supp. at 1153. More precisely phrased, the "local

10. *See, e.g., Bashir v. Nat'l R.R. Passenger Corp. (Amtrak)*, 929 F.Supp. 404, 412 (S.D.Fla.1996) (stating that a tort action predicated on a claim that the train negligently failed to stop or slow to avoid striking a child on the railway would not be preempted); *Herriman v. Conrail, Inc.*, 883 F.Supp. 303, 307 (N.D.Ind.1995) (plaintiff's tort claim that a train's headlight got lost against the background of artificial light on a nearby building was preempted by the FRSA because the condition was not a "specific individualized hazard" because the lights were continuously present at that crossing); *Armstrong v. Atchison, Topeka & Santa Fe Ry.*, 844 F.Supp. 1152, 1153 (W.D.Tex.1994) ("The 'specific, individual hazard' identified by the Easterwood court logically relates to the avoidance of a specific collision.");

*Earwood v. Norfolk S. Ry. Co.*, 845 F.Supp. 880, 887 (N.D.Ga.1993) ("The conditions at the intersection—multiple tracks and rail cars obstructing the view—are not unique local conditions or specific individual hazards. These conditions can and do happen at many intersections in the state, and therefore are not unique to the locality at issue. The Court holds that such conditions are not local hazards within the meaning of the second savings clause."); *Bowman v. Norfolk S. Ry. Co.*, 832 F.Supp. 1014, 1017–18 (D.S.C.1993) (defining "local hazard" and holding that a common law tort action premised on the claim that a railroad has a duty to slow a train at an extra-hazardous crossing was preempted), *judgment affirmed*, 66 F.3d 315 (4th Cir.1995) (Table).

hazard" cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards. *Bowman*, 832 F.Supp. at 1018 (citing *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1553 n. 3 (11th Cir.1991) (citing H.Rep. No. 1194, 91st Cong., 2d Sess. 11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4104, 4117), *aff'd*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). An alternative, expansive construction of the local safety hazard language would excessively preserve local speed regulations and significantly undermine the Secretary's ability to prescribe uniform operational speeds.

In this case, Plaintiffs allege that a local hazard existed at the Sellers Road crossing, and that, consequently, the FRSA does not preempt their tort claim against Amtrack for negligently failing to slow or stop. They allege that the local hazard was created by the lack of active warning devices at the crossing, the steep grade and angle of the crossing, and the proximity of the crossing to a highway. Pl.Br. at 7.

Plaintiffs' allegation is not the type of individualized hazard to which the *Easterwood* Court and section 20106 refers. Warning devices, grade, angle, and proximity to highways are all general conditions of crossings that are amenable to uniform, national standards. Furthermore, defects related to these conditions are already accounted for in the Secretary's regulations governing maximum operational speeds.[11] Thus, stripped of its cloak, Plaintiffs' argument is revealed to be one premised on excessive speed—they essentially argue that trains should always reduce their speed when approaching dangerously designed crossings like the one at Sellers Road. The *Easterwood* court found excessive speed claims preempted. Consequently, the Court finds that summary judgment is appropriate on this claim.

## VI. Negligent Design, Construction, and Maintenance

Plaintiffs next contend that Defendant Union Pacific negligently designed, constructed, and maintained the Sellers Road crossing. Their complaint alleges that an approaching motorist's view down the track, when entering the crossing from the north side, is obscured because of the combination of the angle of convergence of the crossing; the crossing's excessively steep grade; and the brush, trees, and other vegetation in the railroad track right-of-way. Pl. Compl. at 3, ¶ 10. Union Pacific argues that the FRSA and Mo.Rev.Stat. § 389.610 preempt this claim.

### A. Design and Construction

At the time of O'Bannon's accident, Mo.Rev.Stat. § 389.610 gave the Missouri Department of Economic Development's Division of Transportation ("the Division") exclusive power to "enforce reasonable rules and regulations pertaining to the construction and maintenance of all public grade crossings." Under Missouri law, once the Division or its predecessor, the Missouri Public Service Commission, exercises jurisdiction and control over a particular crossing, a railroad has no further common law obligation with respect to the crossing. *Coon v. Atchison, Topeka & Santa Fe, et al.*, 826 S.W.2d 66, 70 (Mo.Ct.App.1992); *Moore v. Atchison, Topeka and Santa Fe Ry.*, 966 F.2d 351, 352–53 (8th Cir.1992).

In this case, Union Pacific has submitted two affidavits of Gary Moreau, Manager of Track Maintenance for Union Pacific, and accompanying exhibits. Moreau's affidavits are intended to show that the Division has exercised jurisdiction over the Sellers Road crossing with regard to design, construction, and maintenance. Plaintiffs make no arguments and point to no evidence contradicting Moreau's sworn statement that the

---

**11.** *See Armstrong v. Atchison, Topeka & Santa Fe Ry.*, 844 F.Supp. 1152, 1153 (W.D.Tex.1994).

[T]he Easterwood court noted that the regulations promulgated to enforce the FRSA "should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings." The related safety regulations were adopted "only after the hazards

posed by track conditions were taken into account." If the Court were to follow Plaintiff's argument, the Easterwood opinion would have no meaning, because it would allow state tort law to determine the maximum speed at a particular crossing based upon conditions already considered by Secretary of Transportation.

Division oversaw the design and construction of the Sellers Road crossing. *See* Fed. R.Civ.P. 56(e) (stating that the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial"). Plaintiffs' arguments target only the inadequacy of the warning devices and the alleged overgrowth of vegetation near the crossing. *See* Pl.Br. at 10–13. Thus, the Court finds that no reasonable jury could find that the Division did not oversee design and construction. As a result, the Court finds that any common law claim arising out of the design or construction of the Sellers Road crossing are preempted by Mo.Rev. Stat. § 389.610.

### B. Negligent Maintenance— Vegetation Overgrowth

The remaining issue, then, is whether section 389.610 or the FRSA preempts Plaintiffs' common law claim based on Union Pacific's alleged failure to control vegetation near the Sellers Road crossing.[12] Under the FRSA's preemption and savings provisions, the first issue is whether the Secretary has promulgated regulations covering the subject matter of Plaintiff's state common law claim. Plaintiffs' allege that Union Pacific negligently failed to trim the brush and weeds in the railroad track right-of-way west of the Sellers Road crossing and that the vegetation obscured the approaching Amtrack train from O'Bannon's view as he traveled across the Sellers Road crossing from the north to south, thereby causing O'Bannon to collide with the Amtrack train. Pl. Br. at 13; Pl. Compl. at 3, ¶ 10. Plaintiffs support their allegations with another affidavit by Larry

Allan, which states that "On and before September 23, 1995, there were brush, trees and shrubbery about 600 to 700 feet west of Sellers Road crossing along side the railroad tracks, such that an approaching Amtrack train at 65 m.p.h. was not visible until six (6) or seven (7) seconds before reaching the crossing." Pl. Br., Ex. B, Affidavit of Larry Allan at ¶ 3.

### 1. Preemption Under the FRSA

Plaintiffs' allegations demonstrate that the vegetation claim combines issues of both excessive speed and negligent control of vegetation. Plaintiffs essentially claim that the train was moving so quickly that, by the time O'Bannon saw it emerge from the cluster of brush, trees, and shrubbery, it was too late for him to avoid colliding with it. Federal regulations address both issues of vegetation and speed.

49 C.F.R. § 213.37, promulgated by the Secretary of Transportation under the FRSA, addresses vegetation.[13] Section 213.37(b) requires railroads to control vegetation on railroad property which is on or immediately adjacent to the roadbed so that it does not obstruct visibility of railroad signs and signals. Section 213.37(d) requires railways to similarly control vegetation so that it does not hinder the functioning of signals. Safeguarding the visibility and functioning of railroad signs and signals protects the safety of motorists at railroad crossings. Section 213.37(b) and (d) obviously contemplate that overgrown vegetation could be hazardous to motorists at railroad crossings, but imposes only the duty to prevent the vegetation in and adjacent to the railbed from disrupting signs and signals. The Secretary did not impose a broader duty to control vegetation

---

**12.** Plaintiffs have not alleged in their complaint or in their brief on summary judgment that the warning devices at the crossing were defective. *See Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 475 (8th Cir.1996) (stating that, if a federally-funded crossbuck had lost its reflectivity, it was not "operating" as required by *Elrod*, 68 F.3d at 243–44, and, consequently, the FRSA does not supplant a state common law claim based on the defect). They alleged and argued only that the devices were insufficient to provide adequate warning. Thus, the Court restricts its discussion of negligent maintenance to the claims relating to the overgrowth of vegetation.

**13.** 49 C.F.R. § 213.37 reads as follows:

Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not—(a) Become a fire hazard to track-carrying structures; (b) Obstruct visibility of railroad signs and signals; (c) Interfere with railroad employees performing normal trackside duties; (d) Prevent proper functioning of signal and communication lines; or (e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

so that it does not obstruct a motorist's visibility of oncoming trains. Instead, the regulations governing maximum operational speed account for such conditions and safety hazards. *See* 49 C.F.R. § 213.9(a) (prescribing maximum operational speeds for freight and passenger trains); *Armstrong*, 844 F.Supp. at 1153 (stating that the Secretary adopted the speed regulations only after track conditions were taken into account). Accordingly, the Court finds that 49 C.F.R. §§ 213.37(b) and 213.9(a) "cover" the same subject matter as Plaintiffs' state common law claim.

■■■ Nonetheless, as discussed above, a finding that the Secretary's regulation covers the subject matter of the state law does not conclude the preemption inquiry. The savings clause preserves additional and more stringent state law when the law is necessary to eliminate or reduce an essentially local hazard and is not incompatible with federal law. 49 U.S.C. § 20106. In this case, however, overgrown vegetation adjacent to the railbed and near a railroad crossing is not an essentially local hazard as defined by section 20106. Such overgrowth is susceptible to uniform, national standards which dictate how far from a railroad crossing vegetation must be controlled. *See Bowman*, 832 F.Supp. at 1018 (defining "local hazard"). Alternatively, uniform, national standards could prescribe lower speed limits near railroad crossings to account for potential visibility obstructions. Consequently, the Court holds that 49 C.F.R. § 213.37(b) and (d) and 49 C.F.R. § 213.9(a), through the FRSA, preempts a state common law tort claim predicated on a railroad's failure to control vegetation adjacent to a railbed, so long as the railroad complies with 49 C.F.R. § 213.37(b).[14] *See Easterwood*, 933 F.2d at 1554. (holding that, because the Secretary has chosen to regulate vegetation on or immediately adjacent to the roadbed, all state regulations in this area are preempted); *Nat'l R.R. Passenger Corp., (Amtrak) v. H & P. Inc.*, 949 F.Supp. 1556, 1564 (M.D.Ala. 1996); *Bowman*, 832 F.Supp. at 1020; *Biggers on Behalf of Key v. S. Ry. Co.*, 820 F.Supp. 1409, 1421 (N.D.Ga.1993). *But see Missouri Pacific R.R. Co. v. Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988) (finding that a state statute regulating vegetation near railways was not preempted), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989).

### 2. Preemption Under Mo.Rev.Stat. § 389.665(2)

■■■ Furthermore, even if the vegetation was not on or immediately adjacent to the railbed, as indicated by the pleadings— and thus outside of the scope of 49 C.F.R. § 213.37's preemptive force—plaintiffs' claim is still preempted by state law. Courts have found that states are free to regulate vegetation located beyond the area contemplated by 49 C.F.R. § 213.37. *See, e.g., Missouri Pacific R.R. Co. v. R.R. Comm'n of Texas*, 833 F.2d 570 (5th Cir.1987); *Easterwood*, 933 F.2d at 1554; *Bowman*, 832 F.Supp. at 1020–21; *Biggers*, 820 F.Supp. at 1421. This Court agrees. Missouri lawmakers have promulgated such regulations in Mo.Rev.Stat. § 389.665(2). Section 389.665(2) imposes a duty on railroads to control vegetation for a distance of 250 feet from crossings.[15] The

14. In this case, Plaintiffs have not alleged that Union Pacific's failure to control vegetation obstructed the visibility or functioning of railroad signs and signals in violation of 49 C.F.R. § 213.37(b) or (d). Consequently, the Court does not reach the issue of whether a state law claim based on a railroad's failure to comply with a federal regulation would survive preemption or whether an implied, private cause of action is viable. *See Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 475 (8th Cir.1996) (stating that, if a federally-funded crossbuck had lost its reflectivity, it would not be "operating" as required by *Elrod*, 68 F.3d at 243–44, and, consequently, the FRSA would not supplant a state common law claim based on the defect); *Michael v. Norfolk S. Ry.*

*Co.*, 74 F.3d 271, 273 (11th Cir.1996) (holding that a state law tort claim based on the inadequacy of federally-funded warning devices at a crossing was not preempted by the FRSA because warning device did not comply with the federal regulation); *see also* Robert E. McFarland, *The Preemption of Tort and Other Common Causes of Action Against Air, Motor, and Rail Carriers*, 24 TRANSP.L.J. 155, 181–82 (1997). *Cf. Moore*, 966 F.2d at 353 n. 4 (stating that, under Missouri law, a railroad may be held liable for negligence in carrying out a safety directive of the Missouri Department of Transportation).

15. Mo.Rev.Stat. § 389.665(2) reads as follows:

statute preempts any common law tort action claiming that a railroad has a duty to control vegetation that is more than a distance of 250 feet from the near edge of a crossing. *Cf. Patterson v. Thompson,* 277 S.W.2d 314, 317 (Mo.Ct.App.1955) (holding that Mo.Rev.Stat. 389.610 supplants the common law in reference to the physical features of construction and maintenance of a railroad crossing); *Mott v. Missouri Pacific R.R. Co.,* 926 S.W.2d 81, 86 (Mo.Ct.App.1996) ("In cases involving a statutory violation, it is generally sufficient to frame an instruction substantially in the language of the statute unless the statutory language requires construction." (quoting *Vandergriff v. Missouri Pacific R.R.,* 769 S.W.2d 99, 104 (Mo. banc 1989))).

■ In this case, the affidavit supporting Plaintiffs' claim states that "there were brush, trees, and shrubbery about 600 to 700 feet west of Sellers Road crossing." Pl. Br., Ex. B, Affidavit of Larry Allan at ¶ 3. This alleges a tort claim based on vegetation that is more than 250 feet from the Sellers Road crossing. As a matter of Missouri law, a railroad has no duty to control vegetation growing 600 to 700 feet from a railroad crossing. Consequently, summary judgment is appropriate on this claim.

### VII. ORDER

Based on the foregoing, it is hereby ORDERED that Plaintiffs' motion under Rule 12(f) to strike paragraphs four and five of Kurt Anderson's affidavit is GRANTED. It is further

ORDERED that Defendants' motion for summary judgment under Rule 56 on Plaintiffs' common law claim premised on inadequate warning devices is taken under advisement. It is further ORDERED that Defendant Union Pacific shall have the opportunity to re-submit affidavits and authenticated documents to reliably show that reflectorized crossbucks were installed at the Sellers Road crossing and that federal funds were used in the installation. Such filings

It shall be the duty of every corporation or person owning or operating any railroad or branch thereof in this state to maintain the right-of-way at public grade crossings so that it will be reasonably clear of vegetation, under-

shall be made within ten (10) days from the date of this Order. Plaintiffs shall have ten (10) days to respond. Due to the approaching trial date, reply suggestions will not be considered. It is further

ORDERED that Defendants' motion for summary judgment under Rule 56 on Plaintiffs' remaining claims is GRANTED.

growth or other debris for a distance of two hundred fifty *feet* each way from the near edge of such crossings where such things would materially obscure approaching trains from the view of travelers on the highway.