Monti GUNN, et al., Appellants,

v.

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY CO., et al., Appellees.

No. 07–99–0081–CV.

Court of Appeals of Texas, Amarillo.

Dec. 30, 1999.

Bill Cornett, Cornett Law Firm, P.L.L.C., Amarillo, for appellant.

D. Thomas Johnson, McWhorter, Cobb and Johnson, LLP, Lubbock, for appellee.

Before BOYD, C.J., JOHNSON, J., and REYNOLDS, S.J.*

CHARLES L. REYNOLDS, Senior Justice (Retired).

This appeal is prosecuted from a take-nothing judgment, finalized after a partial summary judgment and a jury verdict, in an action to recover damages resulting from a fatality in a train-vehicle collision at a railroad crossing. The appeal requires us to decide whether the trial court was correct in summarily ruling that claims of negligently excessive train speed were preempted by the Federal Railroad Safety Act of 1970 (FRSA).[1] Deeming the court to have correctly ruled, we will affirm.

Michael DeShannon Gunn died of injuries received when the southbound delivery van he drove in the afternoon over a railroad crossing was struck by an eastbound Atchison, Topeka and Santa Fe Railway Company train operated by engineer David H. Yarnell and conductor Walter Lee Rice, III. The crossing, given number 014881E by the Department of Transportation, consisted of a single set of tracks, which extended northwesterly to southeasterly at an approximate 61 degree angle across county road 191 in the western city limits of Littlefield. On each side of the crossing there was, as a safety device, a metal crossbuck with reflectorized tape. The crossing is situated some 60 feet north of a parallel road, Loop 430. Two trees, 20 to 25 feet tall, were located to the northwest of the crossing, some 55 feet from the northern rail.

Monti Gunn, individually, and as representative of the estate of Michael Gunn and as next friend of Madelyn Rae DeShannon Gunn, a minor, together with Carolyn Crowson, the natural mother of the deceased (collectively, Gunn), instituted the wrongful death action underlying this appeal to recover damages from the railway company, Yarnell and Rice (collective-ly, Santa Fe). Gunn alleged, *inter alia,* that Santa Fe was negligent in failing to slow the speed of the train in response to a specific individual hazard, and to an excessively local safety hazard, that existed at the crossing, and in failing to provide proper signalization at the crossing due to its extra hazardous nature.

Santa Fe moved, with documentation, for partial summary judgment on the issue of negligently excessive train speed on the ground that the issue comes within the provisions of the FRSA which preempts state law negligence claims based on excessive train speed. At the same time, Santa Fe moved, with documentation, for partial summary judgment on the issue of grade crossing signalization on the ground that the issue is also preempted by FRSA's provisions regarding the determination and installation of grade crossing protection devices.

Gunn responded to both motions. With respect to the excessive train speed issue, the only issue material to the appeal, Gunn pointed out that there is exempt from FRSA's preemption provision a duty to slow a train when necessary to eliminate or reduce an essentially local safety hazard. In this connection, Gunn submits that the angle of the tracks to the roadway, the configuration of the road, the vegetation in the vicinity, and the parallel highway next to the tracks, constituted, or at least raised a fact issue of, a specific individual hazard, which precluded summary judgment.

Subsequent to the filing of the motions for partial summary judgment, there was filed Gunn's fourth amended original petition, Gunn's live trial pleadings, containing allegations of excessive train speed and failure to provide appropriate signal devices at the crossing. Santa Fe levied special exceptions to the allegations, sub-

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

1. The Act was codified in 1970 at 45 U.S.C. §§ 421–434, and was recodified in 1994 at 49 U.S.C. §§ 20101–21311.

mitting that both excessive train speed and signalization were preempted by federal regulations as set out in its motions for partial summary judgment.

Following a hearing on the motions and the special exceptions, the trial judge, deferring a ruling on the motion for partial summary judgment as to signalization, announced that he was going to grant Santa Fe's motion for summary judgment as to excessive speed, and later signed an order granting the motion. With respect to Santa Fe's special exceptions, the judge stated, "I have granted them as to the speed, but not as to the others."

The court submitted the issue of signalization to a jury which, by its answer under the court's instructions given for answering the question posed, failed to find that Santa Fe was negligent in maintaining an extra hazardous crossing without some warning other than the usual crossbuck signals. The court rendered a take-nothing judgment and overruled Gunn's motion for a new trial.

Gunn has perfected this appeal to present two issues with respect to the trial court's grant of Santa Fe's motion for partial summary judgment on, and sustaining Santa Fe's special exceptions to, Gunn's pleadings of negligently excessive train speed. In each issue, Gunn submits that the court's ruling was error, which denied the opportunity to introduce evidence of two recognized exceptions to the federal exemption of excessive train speed claims: specific individual hazard and essentially local safety hazard.

As a threshold matter, we notice that Gunn's two allegations of excessive speed, *i.e.*, the failure to slow the speed of the train in response to (1) a specific individual hazard and (2) an excessively local safety hazard, arise from the same source without a pleaded distinction. The "an excessively local safety hazard" language of the latter allegation is an echo from the express savings clause in the FRSA's original § 434, now § 20106, which provides that "the States may adopt more stringent safety requirements 'when necessary to eliminate or reduce an essentially local safety hazard.'" *See CSX Transp. v. Easterwood*, 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). And, the "a specific individual hazard" wording in the former allegation was used by the *Easterwood* court as a substitute for the statutory "an excessively local safety hazard" language when the court, addressing the second savings clause of then § 434, stated that "the pre-emption of [an] excessive speed claim does not bar suit for breach of related tort duties, such as a duty to slow or stop a train to avoid a specific, individual hazard." *Id.* 507 U.S. at 675 n. 15, 113 S.Ct. 1732. Consequently, we consider Gunn's two allegations as being synonymous and accept them as one allegation of the train's excessive speed due to an excessively local safety hazard.

For purposes of this appeal, the history and operative effect of FRSA is sufficiently set forth in *CSX Transp. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732. Congress enacted the FRSA in 1970 to promote safety and reduce deaths and injuries in all areas of railroad operations, and to reduce railroad related accidents. 507 U.S. at 661, 113 S.Ct. 1732. To achieve these goals, the Secretary of Transportation was directed by the Act to study and develop solutions to safety problems posed by grade crossings, and was vested with broad powers to, among other things, prescribe appropriate rules, regulations, orders and standards. After the standards were promulgated, the states may adopt more stringent safety requirements "when necessary to eliminate or reduce an essentially local safety hazard," provided those requirements are not incompatible with federal laws or regulations and are not an undue burden on interstate commerce. 507 U.S. at 662, 113 S.Ct. 1732.

The following year, the Secretary promulgated regulations under FRSA, which were then codified at 49 CFR § 213.9(a) (1992), setting maximum train speeds for

different classes of track. 507 U.S. at 673, 113 S.Ct. 1732. The track at the crossing number 014881E is class four, for which the maximum speed is 60 miles per hour, a limit imposed only after the hazards posed by the track conditions were taken into consideration, 507 U.S. at 674, 113 S.Ct. 1732, including the conditions posed by grade crossings. 507 U.S. at 675, 113 S.Ct. 1732. The speed ceiling precludes additional state regulations setting a lesser speed, unless a lower speed is "necessary to eliminate or reduce an essentially local safety hazard." 507 U.S. at 675 n. 15, 113 S.Ct. 1732.

 In moving for partial summary judgment on, and in leveling special exceptions to, the issue of excessive train speed, Santa Fe presented photographs of the crossing and documentary evidence. The documentation established that the track at the crossing was class four, permitting a maximum speed of 60 miles per hour; that by the railroad's timetable, the maximum speed through the crossing was 55 miles per hour; that the train's pulse event recorder showed its speed over a distance of two miles to one-fourth mile before the emergency brake was applied was 53 miles per hour; and that when the emergency brake was applied the train's speed was approximately 49 miles per hour. The documentary presentation to the trial court established FRSA's prima facie preemption of Gunn's excessive train speed claim, unless, as Gunn contends, Santa Fe did not negate its pleading of excessive train speed because of an essentially local safety hazard, or Gunn raised a fact issue thereof. However, the photographs presented by Santa Fe, which depicted various views of the crossing from different directions on the day of the accident,[2] revealed no essentially local safety hazard was apparent, thereby defeating the pleading.

 Notwithstanding, Gunn submits that summary judgment proof presented to the court on Gunn's behalf at least raised a fact issue of an essentially local safety hazard and prevented summary judgment on the excessive train speed claim. The proof of the hazard, according to Gunn, was the previously noticed tracks crossing the road at a 61 degree angle, which required a motorist driving south to turn his head more than 90 degrees to check to his right; the proximity of a parallel road; and vegetation at the location.

However, the elements composing the hazard advocated for by Gunn are merely general conditions of crossings accounted for in the Secretary of Transportation's regulations governing maximum speeds. *O'Bannon v. Union Pacific R. Co.*, 960 F.Supp. 1411, 1421 (W.D.Mo.1997), *aff'd*, 169 F.3d 1088 (8th Cir.1999). Specifically, the angled crossing of the tracks over the road, requiring the driver to look backward rather than merely to the right, has no legal significance as a local hazard. *Karr v. Panhandle & Santa Fe Ry. Co.*, 153 Tex. 25, 262 S.W.2d 925, 931 (1953). Neither does the proximity of a road or highway to the crossing qualify as a local hazard, *O'Bannon v. Union Pacific R. Co.*, 960 F.Supp. at 1421, nor is a local hazard created by vegetation near the crossing, the only description of which is two tall trees 55 feet north of the single track, neither of which obscures or interferes with devices signaling the crossing. *Id.* at 1423. Thus, in legal contemplation, Gunn has not raised a fact issue with respect to the pleaded issue of an essentially local safety hazard.

It follows that by showing Gunn had no cause of action on the negligently excessive train speed claims, Santa Fe was entitled to partial summary judgment on the claims, *Wornick v. Casas*, 856 S.W.2d 732, 733 (Tex.1993), and to the sustainment of

---

2. The photographs depict views looking across the crossing toward the east, looking across the crossing toward the west, and looking across the crossing toward the south, the course taken by the deceased just before the accident.

its special exceptions to the pleadings. Thus, neither of Gunn's issues is a legal basis for disturbing the trial court's judgment.

Accordingly, the judgment is affirmed.