Charles E. **HERRIMAN** and Johnny Sue **Herriman**, Plaintiffs,

v.

**CONRAIL INC.**, and **Consolidated Rail Corporation**, Defendants.

No. 1:94–CV–232.

United States District Court,
N.D. Indiana,
Fort Wayne Indiana.

April 24, 1995.

Gene M. Jones, Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, IN, for plaintiffs.

Bruce A. Hugon, Victor L. Frost, II, Andrew W. Swain, Cindy E. Shively, Frost & Hugon, Indianapolis, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

This matter is before the Court[1] on the Defendants', Conrail, Inc. and Consolidated Rail Corporation (hereinafter collectively referred to as "Conrail"), Motion for Partial Summary Judgment, filed March 15, 1995. Plaintiffs, Charles E. Herriman and Johnny Sue Herriman (hereinafter collectively referred to as "the Herrimans"), filed a response brief on April 3, 1995. Conrail filed its reply on April 15, 1995. For the reasons

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

stated below, Conrail's Motion for Partial Summary Judgment is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This wrongful death action arises out of a Railroad grade crossing collision that occurred on August 11, 1992. The Decedent, the 19 year-old son of the Herrimans, was struck by a Southbound Conrail train as he travelled west, across the tracks at the Bond Avenue grade crossing in Marion, Indiana. The collision occurred at about 8:15 p.m., and it was dark at the time.

As the Decedent approached the crossing from the east, he had an unobstructed view to the north of the crossing, enabling him see oncoming southbound trains. However, within his line of sight, and just northwest of the crossing, were several artificial lights mounted on a nearby building. According to the expert report of Stuart Nightenhelser, an engineering consultant, these lights interfered with the decedents ability to judge the distance of the Conrail train. (Plaintiff's exhibit B).[2] To oversimplify, Nightenhelser opines that if both the motorist and the train approached the crossing at a constant (but not necessarily equal) speed, the train's headlight would get lost against the background of the artificial lights and would appear stationary, thereby obscuring the decedent's distance perception. *Id.*

The Herrimans now claim that due to this hazardous lighting condition, the Conrail train was traveling at an excessive rate of speed through the Bond Avenue crossing. At the time of the collision Conrail's locomotive was travelling at 24 miles per hour. The Federal Railroad Administration ("FRA") had classified the tracks which cross Bond

Avenue as Class 4, thereby setting the maximum allowable operating speed over those track at 60 miles per hour. 49 C.F.R. § 213.9(a). Conrail has moved for summary judgment of this excessive speed claim, contending that because the train was traveling well below the maximum allowable operating speed, the Herriman's tort claim is pre-empted by federal law.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which

---

**2.** Defendant has filed a motion to strike Nightenhelser's expert report asserting that it contains inadmissible hearsay. Defendant has offered no explanation in support of that contention, but has simply made a conclusory reference to "Federal Rule of Evidence § 01" [sic]. Rule 56 requires that a party's submissions in opposition to a motion for summary judgment set forth facts that "would be admissible in evidence." FED. R.CIV.P. 56(e). The opinions contained in that report, which are premised upon a visual inspection of the scene, review of accident photos, and review of the police report, do not appear viola-

tive of Rule 802, and would seemingly be admissible under Federal Rule of Evidence, 702 and 703. Conrail has not contested the report's admissibility under either Rule 702 or 703. Nor has Conrail objected to the report on the basis that it is unsworn (which is likely the most proper objection at this point). Accordingly, Conrail's motion to strike exhibit B is denied.

Defendant has also moved to strike Plaintiff's exhibits A and C. The Court found it unnecessary to consider these exhibits and therefore the motion to strike as it relates to these exhibits is moot.

the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Matter of Wildman,* 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. FED.R.CIV.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

## III. DISCUSSION

■ In their Complaint, the Herrimans allege that the grade crossing accident resulted, in part, because Conrail was operating the train at an excessive rate of speed through the Bond Avenue crossing. Conrail argues that because the train was traveling at 24 miles per hour—a rate well under the 60 mph limit codified at 49 C.F.R. § 213.9(a)—45 U.S.C. § 434 instructs that this claim is pre-empted by federal law. Section 434 provides:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. In *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, —— – ——, 113 S.Ct. 1732, 1743–44, 123 L.Ed.2d 387 (1993), the Supreme Court held that the maximum allowable speeds codified at 49 C.F.R. § 213.9(a), "cover[ ] the subject matter of train speed with respect to track conditions, including conditions at grades crossing," and therefore, pre-empt common law tort claims asserting that a train was traveling at an excessive rate of speed. *Id.*

While conceding that excessive speed claims are generally pre-empted, the Herriman's point out that the *Easterwood* Court reserved ruling on whether the pre-emption of excessive speed claims extends to "bar[ ] suit[s] for breach of related tort duties, such as the duty to stop or slow a train to avoid a specific, individual hazard." —— U.S. at ——, n. 15, 113 S.Ct. at 1743, n. 15. The Herriman's insist that their Complaint is more properly construed as a failure to stop to avoid a specific hazard—one which they claim is not subject to pre-emption.

The Court need not resolve the open issue of whether such claims are indeed pre-empted by the operating speed regulations, for the Herrimans' allegation is not the type of individualized hazard to which the *Easterwood* Court was referring. *Bowman v. Norfolk Southern Ry. Co.,* 832 F.Supp. 1014, 1017 (D.S.C.1993). The lighting condition at the crossing did not create a situation which existed solely on the night decedent was killed. Rather, these allegedly hazardous lights were continuously present at that crossing. Further, the duty the Herrimans seek to impose is not one that would require this particular engineer to slow down, but in fact would require a substantial reduction in speed by every Conrail train entering the Bond Avenue crossing at night. This generalized duty is distinguishable from the obvious case of an individual hazard—*i.e.* an engineer who sees a motorist stranded on the crossing, but nevertheless negligently fails to stop or slow his train to avoid the collision. Clearly, the Herrimans complaint raises a general claim of excessive speed, and it is therefore subject to pre-emption.

■ The Herrimans next contend that their particular allegation falls within the savings clause of section 434, which permits a state to adopt or continue in force a more stringent rule of law in order to eliminate an "essentially local safety hazard." The Herrimans claim that the lighting conditions at the Bond Avenue crossing presented an essentially local safety hazard which takes this claim outside the pre-emptive reach of section 434.

The disruptive artificial lighting present at the Bond Avenue crossing is not an essentially local safety hazard within the meaning of the savings clause. The condition of disruptive lighting can, and does, exist at numerous crossings throughout the state, and therefore is not unique to this locality. *Earwood v. Norfolk Southern Ry. Co.,* 845 F.Supp. 880, 888 (N.D.Ga.1993). In fact, the theory proffered by the Herrimans has been expressly rejected by the *Easterwood* Court:

> The state law on which respondent relies is concerned with local hazards only in the sense that its application turns on the facts of each case. The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions. Respondent's contrary view would completely deprive the Secretary of the power to pre-empt state common law, a power clearly conferred by § 434. At the least, this renders respondent's reliance on the common law 'incompatible with' FRSA and the Secretary's regulation.

*Id.* at ——, 113 S.Ct. at 1743. Accordingly, the Herriman's excessive speed claim does not fall within the purview of the savings clause. *Id.; see also, Earwood,* 845 F.Supp. at 888 (crossing with multiple tracks and rail cars obstructing view does not present "an essentially local safety hazard"); *Bowman v. Norfolk Southern Ry. Co.,* 832 F.Supp. 1014 (D.S.C.1993) (crossing adjacent to two chemical plants and used by trucks transporting hazardous chemicals, and heavily trafficked during shift changes does not present an "essentially local safety hazard"); *Estate of Martin v. Consolidated Rail,* 620 N.E.2d 720, 725 (Ind.App.1993) (excessive speed claim premised upon unique conditions of particular crossing not within the savings clause).

 Finally, even if the Herriman's could establish that the allegedly hazardous lighting conditions at the Bond Avenue were unique to that locality, they failed to show that their proposed regulation would not create an undue burden on interstate commerce. *See,* 45 U.S.C. § 434; *Bowman,* 832 F.Supp. at 1019. Although the Herrimans did not address this issue, any such argument would clearly fail. If the Herriman's were to successfully pursue their excessive speed claim, the result would force Conrail and other railroads to hire experts to visually inspect crossings statewide and assess whether lighting conditions may, under certain circumstances, interfere with the view of oncoming motorists. The magnitude of this burden is highlighted by the facts of the present case. The Herrimans do not assert that the lights at the Bond Avenue crossing affected all motorists; instead they affected only westbound motorists who approached the crossing at a constant rate of speed simultaneously with a southbound train also traveling at a constant rate of speed. To expect Conrail to find all such crossings on its rail system, and instruct train engineers to bring their train to a near halt (after all the train in question was already traveling 35 mph less than the maximum allowable speed) before entering the crossing would impose an undue burden upon interstate commerce. "The common-law theory on which [the Herrimans'] excessive speed claim rests is an example of the "hodgepodge of state safety regulations" that Congress sought to avoid when it enacted FRSA to provide uniform railroad regulation. *Id.* Thus, the Herriman's claim is outside the scope of the savings clause, and is pre-empted by speed limitations codified at 49 C.F.R. 213.9(a).[3]

### IV. CONCLUSION

For the reasons stated above, and pursuant to 45 U.S.C. § 434, Plaintiffs' claim that the Conrail train was operating at an excessive rate of speed is pre-empted by 49 C.F.R. 213.9(a). Accordingly, Defendants' Motion for Partial Summary Judgment is GRANTED.

Enter this 24th day of April, 1995.

---

**3.** The Herrimans assert that even if their excessive speed claim is pre-empted, evidence of the train's speed may be relevant to other theories of liability. The Defendants do not dispute this argument at this time.