Randall COX, Plaintiff,

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a Virginia corporation, Defendant.**

**Civil Action No. 1:97–0415.**

United States District Court, S.D. West Virginia.

March 4, 1998.

Michael F. Gibson, Gibson & Associates, Princeton, WV, for Plaintiff.

Robert L. Massie, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

FABER, District Judge.

Pending before the court is the defendant's motion for summary judgment filed on December 22, 1997. The plaintiff filed a response on January 21, 1998. The defendant filed a reply on January 29, 1998, and an amended reply on February 4, 1998.

### Factual and Procedural Background

On March 9, 1995, the plaintiff, Randall Cox, was struck by a Norfolk and Western Railway Company locomotive at a rail crossing commonly referred to as the Davidson crossing. (Def.Mem.S.J.Exh.A.); (Def.Mem.S.J.Exh.C.) The locomotive was operated by Engineer Larry E. Carbaugh, and was traveling at a speed of approximately thirty miles per hour immediately prior to the accident. (Def.Mem.S.J.Exh.C .) The track on which the train was traveling at the time of the accident was a Class 3 track, which has a maximum authorized speed of forty miles per hour for freight trains. (Def. Mem.S.J.Exh.F); 49 C.F.R. § 213.9 (1996).

The plaintiff subsequently initiated this action against the defendant in the Circuit Court of McDowell County, West Virginia, alleging that the defendant was negligent in causing the plaintiff's inquires stemming from the train accident on March 9, 1995. Specifically, the plaintiff's complaint alleges that the defendant was negligent in: (1) failing to install automatic crossing gates at said grade crossing, which are required by defendant's own internal signal installation training manuals, as well as various federal and state traffic safety regulations; (2) failing to properly maintain the road surface between the rails of said grade crossing, so as to prevent motor vehicles from being trapped in the pavement of said crossing; (3) failing to properly maintain the flashing light crossing signals existent it said crossing so that said signals would have properly activated and provided sufficient warning to plaintiff of the approach of the locomotive; (4) failing to sound the air horn on the locomotive at a sufficient distance and for a sufficient time to warn the plaintiff of the approach of the locomotive, pursuant to West Virginia Code

§ 31–2–8 and other applicable federal safety regulations; (5) failing to properly design said highway crossing; and (6) failing to operate said locomotive at a reduced speed necessary to reduce or eliminate an essentially local safety hazard. (Comp. at 3.) The plaintiff's complaint requests both compensatory and punitive damages. Comp. at 4.

The defendant removed this action to this court by filing a notice of removal on April 22, 1997. The plaintiff did not file a motion to remand.

### The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is not genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of pro at trial. *Id.* 477 U.S. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the moving party has met this burden, the burden shifts to the adverse party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict ....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is rarely colorable, or is not significantly probative, summary judgment may be granted." *Id.* 477 U.S. at 249–50. The "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

### Claims that the Plaintiff is not Longer Pursuing

The defendant's motion for summary judgment methodically discusses each basis of the plaintiff's complaint and asserts that it is entitled to summary judgment as to each count. The defendant's motion also requests it be granted summary judgment in regard to the plaintiff's punitive damages claim. The plaintiff, in response, only challenges the defendant's cited authority in regard to the plaintiff's claims involving train speed, count six, failure to sound the air horn (count four), improper maintenance of the road surface (count two), and punitive damages. In regard to the remaining counts in the plaintiff's complaint, the "plaintiff recognizes the authority cited by defendant and offers no authority or argument in opposition." (Plaint. Resp. at 11.) Furthermore, at a pretrial conference held in this case on February 23, 1998, plaintiff's counsel represented to this court that the plaintiff no longer wished to pursue these counts. Accordingly, counts one, three and five of the plaintiff's complaint are DISMISSED. The court will address the motion for summary judgment in regard to each of the remaining counts in turn.

### Train Speed

One of the plaintiff's claims in this action is that the defendant was negligent in failing to operate the locomotive that struck the plain-

tiff at a reduced speed necessary to reduce or eliminate an essentially local safety hazard. (Comp. at 3.) The defendant moved for summary judgment on this ground, noting that the United States Supreme Court has held that excessive speed claims are preempted by regulations promulgated pursuant to the Federal Railroad Safety Act of 1994 ("FRSA"). (Def.Mem.S.J. at 13–14.)

In response to the defendant's motion, the plaintiff recognizes that the FRSA does preempt state excessive speed claims, but notes that suit for breach of related tort law duties, such as the duty to slow or stop to avoid a specific, individual hazard has not been preempted. (Plaint.Resp. at 3.) The plaintiff maintains that the weather conditions existing at the time of this accident are a specific, individual hazard and that one district court has found that state-imposed duties to slacken speed due to weather conditions are not preempted by the FRSA. As such, the plaintiff states that an issue exists "as to whether the speed of the train which struck Mr. Cox was appropriate, given the existing weather conditions." (Plaint.Resp. at 5.)

The FRSA was enacted in 1994 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 (1996). The Act gives the "Secretary of Transportation the power to prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970." 49 U.S.C. § 20103(a) (1997). The preemptive effect of laws, regulations, and orders that exist pursuant to the FRSA is governed by 49 U.S.C. § 20106. Section § 20106 states:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related railroad safety until the Secretary of Transportation prescribes a regulation or issues in order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regula-

tion, or order related to railroad safety when the law, regulation, or order—

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (1997).

In *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the United States Supreme Court discussed the preemptive effect of the FRSA on state excessive speed claims.* In *Easterwood,* Thomas Easterwood was killed when a train owned and operated by CSX Transportation, Inc. collided with his truck. *Easterwood,* 507 U.S. at 661. Thomas Easterwood's widow brought suit, alleging, among other things, that CSX Transportation, Inc. breached its common law duty to operate its train at a moderate and safe rate of speed. *Id.* at 673. The Supreme Court faced the issue of whether the FRSA preempted this claim. *Id.* at 661.

In addressing this issue, the Court stated that 49 C.F.R. § 213.9(a) (1992) set maximum allowable operating speeds for all trains for each class of track on which they travel. *Id.* at 673. In light of this regulation, the Court found that the "federal regulations adopted by the Secretary of Transportation pre-empt respondent's negligence action only insofar as it asserts that petitioner's train was traveling at an excessive speed" because the regulations substantially subsume the subject matter of the relevant state law. *Id.* at 665, 675. The Supreme Court further stated that the "savings clause" of the FRSA, which allows state laws in certain circumstances, even though otherwise preempted, did not save this cause of action. *Id.* at 675. The Court indicated that the plaintiff's cause of action was based in negligence, which "provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions." *Id.* A contrary view "would completely deprive

---

* *Easterwood* **dealt with the FRSA of 1970.** Though the section numbers of the 1970 Act differ from those stated above in the 1994 Act, the provisions themselves do not differ.

the secretary of the power to pre-empt state common law, a power clearly conferred" by the statute. *Id.*

Thus, in *Easterwood,* the plaintiff's state negligence cause of action based on excessive speed was preempted. The Supreme Court made clear, however, that its holding was related only to excessive speed claims. The Court did not decide the issue of whether a "breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard" was preempted. *Id.* at 675, n. 15; *See also, Michael v. Norfolk,* 74 F.3d 271, 273 (11th Cir.1996) (stating that Supreme Court limited holding to excessive speed claims).

█ Accordingly, this court believes that following the Supreme Court's opinion in *Easterwood,* a state negligence claim involving train speed, should be analyzed under the following statement of law: (1) state claims based on excessive speed are preempted by the FRSA; (2) though excessive speed claims are preempted, by suits for related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard might not be preempted; (3) the FRSA permits states to adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. The state law, regulation, or order relating to railroad safety will be preempted only if federal regulations substantially subsume the subject matter of the relevant state law; and (4) even if state law is preempted, a state may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when such is necessary to eliminate or reduce an essentially local safety hazard, not incompatible with a law, regulation, or order of the United States Government, and it does not unreasonably burden interstate commerce.

With this law in mind, the court finds that the defendant is entitled to summary judgment in regard to the plaintiff's speed claim.

### Plaintiff's Speed Claim is an Excessive Speed Claim

Again, state tort law claims for excessive speed are preempted by the FRSA if the train was operating within the prescribed speed limits. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 675, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *Michael v. Norfolk Southern Ry. Co.,* 74 F.3d 271, 273 (11th Cir.1996). However, the issue of whether federal law bars suit for breach of related tort law duties, such as a duty to slow or stop a train to avoid a specific, individual hazard, has not been decided by the Supreme Court. *Id.; Michael v. Norfolk S. Ry. Co.,* 74 F.3d 271, 273 (11th Cir.1996).

█ In this case, it is undisputed that the train was traveling at approximately thirty miles per hour immediately prior to the accident. (Def.Mem.S.J.Exh.C). It is also undisputed that the crossing in question is part of a class 3 track, which carries a maximum authorized speed of forty miles per hour for freight trains pursuant to 49 C.F.R. § 213.9 (1996). (Def.Mem.S.J.Exh.F.) Thus, any state negligence claim that the plaintiff is asserting in this case based on excessive speed is preempted by the FRSA.

In his complaint, the plaintiff states his train speed claim as follows: The defendant was negligent in "[f]ailing to operate said locomotive at a reduced speed necessary to reduce or eliminate an essentially local safety hazard." (Comp. at 3.) The plaintiff elaborates on the nature of this claim in his response to the defendant's motion for summary judgment when he states that he has "presented a question as to whether the speed of the train which struck Mr. Cox was appropriate given the existing weather conditions." (Plaint.Resp. at 6.) Thus, as stated, the plaintiff's claim is whether the train's speed was appropriate given the weather conditions.

Having examined the plaintiff's statement and elaboration of his claim, the court finds that the plaintiff's claim, by its terms, is an excessive speed claim. Such a conclusion is clear based on the fact that the plaintiff framed the issue in regard to whether the train's speed was appropriate. If the plaintiff's claim did not concern excessive speed,

but instead involved a duty to slow or stop to avoid a specific, individual hazard, the issue involved would have been framed by the plaintiff as whether the defendant was negligent in failing to slow down or stop to avoid a specific, individual hazard. Thus, because the plaintiff's claim is an excessive speed claim involving a train that was operating within the maximum speed limit set forth in the FRSA regulations, the plaintiff's claim is preempted.

### There is no Specific Individual Hazard in this Case

Even if the plaintiff's speed claim was not based on excessive speed but, rather, was based on a claim that the defendant was negligent in not slowing or stopping to avoid a specific, individual hazard, the court finds that the plaintiff has not pled a specific, individual hazard.

In the plaintiff's response to the motion for summary judgment, the plaintiff alleges that the weather conditions existing at the time of the accident constitute a specific, individual hazard as spoken of in *Easterwood.* (Plaint. Resp. at 5.) Contrary to the plaintiff's assertion, the weather conditions existing in this case at the time of the accident are not a specific, individual hazard as spoken of in *Easterwood.*

In *O'Bannon v. Union Pac. R.R. Co.,* 960 F.Supp. 1411 (W.D.Mo.1997), the district court discussed the meaning of a specific, individual hazard as spoken of in *Easterwood.* The court noted that generally,

> courts considering this issue have ruled that a 'specific individual hazard' must be a discrete and truly local hazard, such as a child standing on a railway. They must be aberrations which the Secretary could not have practically considered when determining train speed limits under the FRSA. More precisely phrased, the 'local hazard' cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards. An alternative, expansive construction of the local safety hazard language would excessively preserve local speed regulations and significantly undermine the Secretary's ability to prescribe uniform operational speeds.

*Id.* at 1420–21. Furthermore, another district court described that the obvious case of a specific, individual hazard was "an engineer who sees a motorist stranded on the crossing, but nevertheless negligently fails to stop or slow his train to avoid the collision." *Herriman v. Conrail Inc.,* 883 F.Supp. 303, 307 (N.D.Ind.1995).

These definitions, which the court finds adequately address the meaning of a specific, individual hazard, do not encompass the weather conditions at the time of this accident. Though the actual surface of the crossing involved was covered with snow the day of the accident, the plaintiff admits that it was not showing at the time of the accident, was not foggy, and that there was good visibility. (Plaint.Resp.Exh 3., p. 43–46); (Def.Rep.Exh.A., p. 43–46.) This type of weather is not discrete and truly local to this locality of West Virginia. In fact, this type of weather often exists during winter months all across West Virginia and most of the country. Thus, such weather is not an aberration which the Secretary could not have practically considered when determining train speed limits under the FRSA, and weather conditions such as these are capable of being adequately encompassed within uniform, national standards. Accordingly, the weather conditions in this case are not a specific, individual hazard as spoken of in *Easterwood.*

Furthermore, to claim that weather conditions were a specific, individual hazard as spoken of in *Easterwood,* would pave the way for infinite state negligence lawsuits involving train accidents occurring in less than perfect weather. Such a holding would act directly contrary to Congress' intent that laws, regulations and orders related to railroad safety be nationally uniform to the extent possible. 49 U.S.C. § 20106 (1997). Such a holding would also mean that the Secretary only took into account perfect weather conditions when the Secretary prescribed maximum speed limits. Therefore, for all of the aforesaid reasons, the court finds that the weather conditions in this case do not constitute a specific, individual hazard.

## Preemption

To the extent the plaintiff's claim is based on excessive speed, the court, in this memorandum opinion, has already concluded that such a claim is preempted. However, even if the plaintiff's claim is not based on excessive speed, and even if weather conditions are a specific, individual hazard as spoken of in *Easterwood*, a state claim based on failure to slacken speed due to the weather conditions existing in this case at the time of the accident is preempted by the regulations prescribed pursuant to the FRSA.

To prevail on a claim that regulations have preemptive effect, the defendant must establish that the federal regulations prescribed pursuant to the FRSA substantially subsume the subject matter of the relevant state law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). A number of courts have addressed the issue of whether a state claim based on failure to slacken speed under certain circumstances is preempted.

In *O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411, 1420 (W.D.Mo.1997), the court stated that 49 C.F.R. § 213.9(a), which prescribes trains' operating speed limits, substantially subsumes a common law claim alleging that a railroad was negligent in failing to operate at a lower speed under the circumstances.

Similarly, in *Williams v. Alabama Great S.R.R. Co.*, 1994 WL 419863 (E.D.La.1994), the plaintiff argued, among other things, that the train that hit the decedent should have reduced its speed because of fog and the presence of a brick facility. *Id.* at *2. The court indicated that excessive speed claims were preempted under *Easterwood,* but that related tort law duties, such as the duty to avoid a specific, individual hazard, might not be preempted. *Id.* The court then stated that the specific, individual hazard language in *Easterwood* "means what it says—namely, if possible, a train should reduce its speed in order to avoid an imminent collision." Because fog is not an object that the train could collide with, the court held that federal law preempted the plaintiff's claim. *Id.*

On the other hand, the plaintiff cites an unpublished district court case that held that a state law claim based on a failure to slacken speed due to snowy weather conditions is not preempted by the FRSA. *Bakhuyzen v. National Rail Passenger Corp.*, No. 1:94–CV–264, at 9 (W.D.Mich. Feb. 5, 1996). Specifically, the court stated that "[m]aximum train speeds, like automobile speed limits, do not remove from the driver the obligation to exercise due care when and if the circumstances such as poor visibility due to snow make operation at the maximum speed careless." *Id.* In so holding, the court referred to *Herriman v. Conrail Inc.*, 883 F.Supp. 303 (N.D.Ind.1995), stating that the court in such case held that a negligence claim based on the failure to slow due to hazardous lighting was preempted. *Bakhuyzen*, at 9. The *Bakhuyzen* court cited the following reasoning in *Herriman* as instructive:

> The lighting condition at the crossing did not create a situation which existed solely on the night decedent was killed.... Further, the duty the Herrimans seek to impose is not one that would require this particular engineer to slow down, but in fact would require a substantial reduction in speed by every Conrail train entering the Bond Avenue crossing at night.

*Bakhuyzen*, at 9 (quoting *Herriman v. Conrail Inc.*, 883 F.Supp. 303, 307 (N.D.Ind. 1995)). The *Bakhuyzen* court then noted that contrary to lighting at a crossing, weather conditions are not stated, they "arise and abate, requiring independent responses from individual engineers." *Id.* Furthermore, the court provided, weather conditions are not capable of being adequately encompassed within uniform national standards. *Id.* Consequently, the court stated that the duty to slow the train due to snowy weather conditions is not preempted by the FRSA. *Id.*

■ Thus, authority exists on both sides of the issue of whether a state claim based on a duty to slacken speed due to weather conditions is preempted by the FRSA. This court, though, agrees with the conclusions reached in *O'Bannon* and *Williams*. The court further believes that such a holding in this case is supported by policy concerns.

If the court were to hold that state law claims based on a failure to slacken speed due to weather conditions were not preempted by the FRSA, the court would have to find that the Secretary did not take into account less than perfect weather conditions when the Secretary set the operating speed limits. Again, on the day of the accident in question, though the actual surface of the crossing involved was covered with snow, it was not snowing at the time of the accident, was not foggy, and there was good visibility. (Plaint.Resp.Exh.3., p. 43–46); (Def.Rep.Exh.A, p. 43–46.) These conditions, though not perfect, are not an aberration either. To hold that these conditions are not preempted by the FRSA would mean that every time it was not a perfectly sunny day and a train accident occurred, a plaintiff could bring a state suit based on train speed. Such a result would swallow the federal regulations dealing with train speed, undermine the Secretary's ability to prescribe uniform operational speeds, and act contrary to Congress' intent that laws, regulations, and orders related to railroad safety be nationally uniform to the extent practicable. Additionally, holding that the regulations substantially subsume a train's duty to slacken speed in less than perfect weather conditions does not mean that a defendant can avoid state liability when its train fails to slacken speed to avoid a person, car or other object on the train tracks. Rather, such a holding only means that a train need not reduce its speed in less than perfect weather conditions below those speeds set forth in federal regulations.

Furthermore, the court finds the *Bakhuyzen* opinion unpersuasive for a number of reasons. First, *Bakhuyzen* substantially bases its holding on the analysis in *Herriman*. However, contrary to the statement of the *Bakhuyzen* court, the district court in *Herriman* never found that the plaintiff's failure to slacken speed due to hazardous lighting was preempted. Rather, the court explicitly stated that "[t]he Court need not resolve the open issue of whether such claims are indeed preempted by the operating speed regulations...." *Herriman v. Conrail, Inc.,* 883 F.Supp. 303, 307 (N.D.Ind.1995). Secondly, the facts of *Bakhuyzen* are distinguishable from the facts in this case. The plaintiff in *Bakhuyzen* argued that the train had to operate at a slower speed because there was: (1) limited visibility due to snowy weather conditions; (2) an obstructed view from the motorists looking westbound at the crossing; (3) lack of protection at the crossing; and (4) an engineer's admission that this was a dangerous crossing. *Bakhuyzen v. National Rail Passenger Corp.,* No. 1:94–CV–264, at 7 (W.D.Mich.1996). In the case before this court, none of these four factors existed the day of the accident. Thus, *Bakhuyzen* is a substantially more compelling case than the one before this court.

Accordingly, for all the aforesaid reasons, the court finds that even if the plaintiff's claim is not based on excessive speed and even if weather conditions are a specific, individual hazard as spoken of in *Easterwood,* the plaintiff's speed claim is preempted.

### The Savings Clause

As noted earlier, even though federal law substantially subsumes a subject matter, 49 U.S.C. § 20106 contains a savings clause which permits states to adopt or continue in force certain laws, regulations, or orders related to railroad safety. In order for a state law, regulation or order to be saved, though, it must be (1) necessary to eliminate or reduce an essentially local safety hazard; (2) not incompatible with a law, regulation, or order from the United States Government; and (3) not unreasonably burden interstate commerce. This savings clause is to be narrowly construed. *Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1553 n. 3 (11th Cir.1991), *aff'd,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *Wright v. Illinois Cent. R.R. Co.,* 868 F.Supp. 183, 187 (S.D.Miss.1994). In this case, the plaintiff's claim that the defendant had a duty to slacken speed due to the existing weather conditions does not meet these three requirements.

First, the state negligence law that the plaintiff relies on is not necessary to eliminate or reduce a local safety hazard. The weather conditions that existed the day of the accident in this case are not local. As noted previously, such conditions occur fre-

quently all across West Virginia and across the country. As such, the plaintiff's common law theory of negligence for failure to slow a train under certain circumstances would amount to a statewide rule. The narrow savings clause exception cannot be applied to uphold the application of such a statewide rule. *Norfolk & W. Ry. Co. v. Public Utilities Comm'n,* 926 F.2d 567, 571 (6th Cir. 1991); *Wright v. Illinois Cent. R.R. Co.,* 868 F.Supp. 183, 187 (S.D.Miss.1994); *Bowman v. Norfolk S. Ry. Co.,* 832 F.Supp. 1014, 1018 (D.S.C.1993), *aff'd,* 66 F.3d 315, 1995 WL 550079 (4th Cir.1995).

Additionally, the plaintiff's cause of action would impose an unreasonable burden on interstate commerce because the duty would require every train to slacken speed every time snow was on the ground, even though visibility was not impaired. Due to the frequency that such weather conditions occur, such a requirement would act as an unreasonable burden on interstate commerce. Consequently, the plaintiff's preempted claim is not saved by the savings clause of the FRSA.

In sum, in regard to the plaintiff's train speed claim, the court finds that the plaintiff's claim is an excessive speed claim. The Supreme Court in *Easterwood* found that such claims are preempted by the FRSA. To the extent, though, that the plaintiff's claim is not an excessive speed claim, the court finds that the plaintiff's claim does not involve a specific, individual hazard as spoken of in *Easterwood.* Even if weather conditions were a specific individual hazard, however, the plaintiff's claim is still preempted by the FRSA and is not saved by the FRSA's savings clause. Accordingly, the defendant's motion for summary judgment is GRANTED in regard to the plaintiff's train speed claim.

### Sounding of the Air Horn

The plaintiff's next claim is that the defendant was negligent in failing to sound the air horn on the locomotive at a sufficient distance and for a sufficient time to warn the plaintiff of the approach of the locomotive. (Comp. at 3.) This cause of action is presumably being brought pursuant to West Virginia Code § 31–2–8, which states, in pertinent part, as follows:

A bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at a distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing for a time sufficient to give due notice of the approach of such train before such street or highway is reached....

W.Va.Code § 31–2–8 (1996).

■ According to the defendant's motion for summary judgment, the plaintiff's only evidence that a whistle or horn was not sounded is negative evidence. (Def.Mem.S.J. at 18.) On the other hand, the defendant submits the affidavit of Engineer Larry E. Carbaugh as positive evidence that the locomotive's whistle was blown and its bell was rung approximately 1,200–1,300 feet from the Davidson crossing the day of the accident. (Def.Mem.S.J.Exh. C.) The defendant asserts that negative evidence that a witness did not hear a signal, without proof that he or she was listening and was in a position to hear, carries little or no weight, especially in the face of positive evidence to the contrary. (Def.Mem.S.J. at 19.) Therefore, the defendant maintains that it is entitled to summary judgment on this claim.

Under West Virginia case law,

[t]he fact that witnesses have heard signals given by a locomotive approaching a crossing, warning travelers of danger, is not necessarily in conflict with the evidence of other witnesses who did not hear them; for the observation of the fact by those who heard is consistent with the failure of others to hear them.

Whether a conflict arises between positive and negative evidence of this character depends upon the facts and circumstances of each case, from which it may be determined whether such negative evidence has any probative value.

*Snyder v. Baltimore & Ohio R. Co.,* 135 W.Va. 751, 65 S.E.2d 74, 78–79 (1951) (quoting *Cavendish v. Chesapeake & O.R. Co.,* 95 W.Va. 490, 121 S.E. 498 (1924)). Thus, the plaintiff's negative testimony that he did not hear a bell or horn does not necessarily create a conflict with Larry Carbaugh's posi-

tive testimony, unless, from the facts and circumstances of this case, it may be determined that the plaintiff's negative testimony has probative value.

In this case, the court finds that plaintiff's deposition and the affidavit of Michael R. Barlow, in which Michael R. Barlow states that there was no train whistle, horn or bell sounding, create a genuine issue of fact for trial. Accordingly, the defendant's motion for summary judgment in regard to this claim is DENIED.

### Improper Road Maintenance

In addition, the plaintiff claims that the defendant was negligent in failing to properly maintain the road surface between the rails of the Davidson crossing, so as to prevent motor vehicles from being trapped in the pavement of said crossing. (Comp. at 3.) Defendant moves for summary judgment on this claim, stating that the plaintiff has proffered no evidence that alleged defects in the surface of the crossing, other than snow and ice, caused his vehicle to become stuck on the crossing. (Def.Mem.S.J. at 22.)

In response, the plaintiff points to his deposition testimony as evidence that existing potholes in the road surface, combined with inclement weather conditions, caused the plaintiff to become stuck on the crossing. (Plaint.Resp. at 9.) Specifically, the plaintiff first points to the following passage in his deposition:

> Q: On the day of your accident, could you see any potholes in the crossing, or were those holes also snow covered.
>
> A: They was all I guess snow covered— no they was run down. There had been a lot of traffic across the track. There was pothole dips or whatever you want to call it through there. There had been quite a bit of traffic and people was stuck up on the mountainsides.

(Plaint.Resp.Exh. 3, at 44.) And, second, the plaintiff cites his deposition statement that "it was just like a packed snow hole, you know, because most of your holes got water in there." (Plaint.Exh. 3, at 44.)

Based on the plaintiff's deposition testimony, and contrary to the defendant's assertion, the court finds that a genuine issue of fact exists in regard to whether the potholes existed in the surface of the crossing and whether such potholes caused or contributed to the plaintiff's vehicle becoming trapped. Accordingly, the defendant's motion for summary judgment on this claim is DENIED.

### Punitive Damages

Finally, the plaintiff's complaint requests a punitive damages award. (Comp. at 4.) The defendant moves for summary judgment on this claim, alleging that the plaintiff can point to no evidence which shows that defendant's conduct was gross, reckless or wanton. (Def.Mem.S.J. at 26.) In regard to this portion of the defendant's motion for summary judgment, the court finds it more appropriate to rule on this issue during the trial. Therefore, the court reserves its ruling on this portion of the defendant's motion until such time.

### Conclusion

In sum, for the aforesaid reasons, counts one, three and five of the plaintiff's complaint are **DISMISSED,** and the defendant's motion for summary judgment in regard to the remaining counts is **GRANTED** in part and **DENIED** in part. Specifically, the court **GRANTS** the defendant's motion for summary judgment in regard to the plaintiff's claim based on train speed, **DENIES** the defendant's motion for summary judgment in regard to the plaintiff's claim of an alleged failure to sound a train's whistle or bell, **DENIES** defendant's motion for summary judgment in regard to plaintiff's improper maintenance of the road surface claim; and **RESERVES** ruling on the punitive damages issue.