Harold Richard **CLEVENGER** b/n/f Sharon Hamaker, natural parent, and Harold Richard Clevenger, individually, Plaintiffs-Appellants,

v.

**OAK RIDGE SCHOOL BOARD**, Dr. Robert J. Smallridge, Jo Ann Garrett, Shirley Hendrix, Steve Jernigan, John Murphy, and J.C. Scarbrough, Members of the Oak Ridge School Board, acting in their official capacity; Dr. Robert L. McElrath, Commissioner, State Board of Education; H. Lynn Greer, Jr., Edward C. Blank, Jan Buxton, John Ferguson, R.B. Hailey, John C. Jones, Florence Leffler, Hugh T. McDade, May Alice Ridley, Nannie G. Rucker, John E. Seward, Jr., Billy Ray Vinson, Lamar Alexander, Wayne Brown, and Jo Leta Reynolds, Members, State Board of Education, acting in official capacity, Defendants-Appellees.

No. 83–5840.

United States Court of Appeals,
Sixth Circuit.

Argued July 31, 1984.

Decided Sept. 19, 1984.

William Allen, Rural Legal Services of Tn., Inc., Oak Ridge, Tenn., for plaintiffs-appellants.

William M. Leech, Jr., Atty. Gen. of Tenn., Kathleen A. Maloy, Asst. Atty. Gen., Nashville, Tenn., for defendants-appellees.

James M. Webster, Oak Ridge, Tenn., for Oak Ridge School Bd.

Before KEITH and MARTIN, Circuit Judges, and SILER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The only question in this case is whether the Oak Ridge, Tennessee, School Board is providing Harold Richard Clevenger the kind of "free appropriate public education" required by the Education for All Handicapped Children Act, 20 U.S.C. § 1412. The School Board has decided to place Richard at Riverbend, a residential school with psychiatric treatment which is part of the Lakeshore Mental Health Institute in Knoxville, Tennessee. Richard's mother believes that the Riverbend School is inappropriate for Richard and wants him placed instead at the Brown School in San Marcos, Texas. The district court, 573 F.Supp. 349, agreed with the School Board's decision. Richard's mother now appeals.

The Education for All Handicapped Children Act provides federal funding for state and local school systems to assist them in educating handicapped children. The Act also sets minimum standards for recipients of its money, requiring that they provide a "free appropriate public education" for all impaired children between three and twenty-one years of age (with certain exceptions not relevant here). 20 U.S.C. § 1412(1) and (2). Included within the definition of the handicapped are "seriously emotionally disturbed children." 20 U.S.C. § 1401(1). Tennessee law also requires local school systems to provide handicapped children with "special education services sufficient to meet the needs and maximize the capabilities of handicapped children." Tenn. Code Ann. § 49–10–101.

Richard Clevenger is, by all accounts, a seriously emotionally disturbed nineteen-year-old and, as such, comes within the coverage of the Act. His problems appear to have been caused by a brain injury at birth resulting from a fractured skull received during a forceps delivery. He first began manifesting serious behavioral problems in the second grade. Since that time, he has been in and out of the public schools as well as a number of other institutions, including juvenile court. In January 1979, the Oak Ridge school system first diagnosed him as requiring the services of its special education program. By September 1980, it acknowledged that he had a serious emotional disturbance.

Today, Richard retains average intelligence but has the emotional maturity of a six-year-old. He is very impulsive, aggressive, and hostile to authority, and he does not learn from his mistakes. He may also be schizophrenic. All the mental health professionals agree that he cannot learn in the normal, public school setting. However, they also agree that Richard could make progress in a highly structured, well-staffed, residental school with psychiatric treatment.

■ The School Board concedes that Richard requires a special placement and suggests that the Riverbend School in Knoxville is an appropriate choice. Riverbend is a residential school with a low student/teacher ratio and psychiatric counseling for all students. Richard has already attended Riverbend on two occasions, most recently for several months in 1979 when he was fourteen years old. He was discharged from Riverbend the second time because he was not cooperating with the staff. Richard's mother concedes that Riverbend is a good facility but she does not believe it is appropriate for Richard. We must agree.

Four psychiatrists/psychologists testified at the proceedings in district court. Only one, Dr. Nipper, the Oak Ridge school psychologist, testified that Riverbend was an appropriate placement for Richard. However, he also testified that he was not at all familiar with the educational programs available at Riverbend. He viewed Riverbend primarily as a mental institution and believed that it would be an appropri-

---

* Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern and Western Dis-    trict of Kentucky, sitting by designation.

ate place to treat Richard's psychiatric problems. In his opinion, an educational program for Richard was "more or less, irrelevant." Because the purpose behind the Act is to guarantee an appropriate education for Richard, Dr. Nipper's opinions on his placement would not appear to merit a great deal of consideration.

The other three psychiatrists/psychologists who testified, as well as the director of the Riverbend program, all agreed that Riverbend was not the right place for Richard for several reasons. First, they felt that Richard needed a long-term placement of at least two years. Riverbend is generally a shorter-term facility, geared toward rapid reintegration of its students into their families and communities. The average stay at Riverbend is only eight months. Second, they thought that Richard's extreme oppositional behavior required a secure, locked facility. This would prevent Richard from impulsively running away from his treatment.[1] Even Dr. Nipper agreed that a locked facility is probably best for Richard. Riverbend has no locked wards. Finally, and most important, the staff at Riverbend has said that it does not want Richard at Riverbend because he is not sufficiently cooperative to allow its program to work. By contrast, the Brown School does offer long-term treatment, does have locked wards, and is willing to take Richard into its program.

▮ The district court's decision on whether a given educational program is appropriate for an individual child appears to be a mixed question of fact and law. The trial judge is required to measure the factual situation of a handicapped child and the educational program proposed to accommodate his handicap against the legal standard of appropriateness. Although some mixed questions of fact and law are reviewed under the clearly erroneous standard of Fed. R. Civ. P. 52(a), *see, e.g.,*

*Irving Pulp & Paper v. Dunbar Transfer & Storage,* 732 F.2d 511, 515 (6th Cir.1984) (negligence), the general rule is that they are freely reviewable on appeal. *See K&M Joint Venture v. Smith Int'l, Inc.,* 669 F.2d 1106, 1111–1112 (6th Cir.1982); C. Wright & A. Miller, 9 Federal Practice & Procedure § 2589 (1971). Under either standard, the district court's decision in this case cannot stand. As our discussion has indicated, we believe there is a complete lack of evidence in the record that Riverbend is the appropriate *educational* placement for Richard.

In an attempt to salvage the district court's opinion, the School Board argues on appeal that its educational plan for Richard need not take into account Richard's oppositional behavior and run-away tendencies. According to the Board, all it need do is provide a learning environment that Richard can take advantage of if he so desires. In the Board's words: "A degree of motivation and cooperation must be expected from the plaintiff who is a competent adult." The Board's approach unfortunately ignores both reality and its obligations under the Act. As all the psychiatric testimony in this case clearly established, Richard's main learning problem is his *inability to cooperate* with authority. Accordingly, the only appropriate placement for Richard is one which specifically takes into account and provides for this lack of cooperation. The Act requires that all "special education" students be provided with "specially designed instruction, at no cost to parents or guardian, to meet the *unique* needs of a handicapped child." 20 U.S.C. § 1401(16) (emphasis added). It would be disingenuous at best for us to find that placing Richard in an institution that does not want him and which claims to be unsuitable for him will meet his unique educational needs.

▮ The School Board also brings up the issue of cost. The Brown School, which

**1.** Because Richard has passed the age of majority, the School Board argues that the presence or absence of locked wards is irrelevant. According to the Board, Richard can sign himself out at any time as long as there continues to be no commitment order in effect. However, an official at the Brown School testified that the

school has a mandatory 96-hour, cooling-off period before any resident can leave. During this period, she said, the staff generally manages to convince the student that staying at Brown is in his best interests. Of course, if the situation justifies, civil commitment is always a possibility.

Richard's parents believe is the correct placement for their child, costs about $88,-000 a year. That is, without doubt, a great deal of money. Our decisions in *Roncker ex rel. Roucker v. Walter*, 700 F.2d 1058, 1063 (6th Cir.1983), and *Age v. Bullitt County Public Schools*, 673 F.2d 141, 145 (6th Cir.1982), recognize that cost can be a legitimate consideration when devising an appropriate program for individual students. Nevertheless, cost considerations are only relevant when choosing between several options, all of which offer an "appropriate" education. When, only one is appropriate, then there is no choice. Moreover, we note that the option favored by the School Board is also very costly—$55,-000 for each year at Riverbend. Given the magnitude of the costs involved, it would be the wiser course to spend more on a program that has a chance to work rather than less on one that has no chance at all.

Accordingly, the decision of the district court is reversed and the cause remanded to the district court for an order that Richard be placed in the Brown School in San Marcos, Texas.