**Sharon Rowan LUDWIG,
Plaintiff—Appellant,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY a/k/a Norfolk Southern Corporation, Defendant—Appellee.**

**No. 01–5525.**

United States Court of Appeals,
Sixth Circuit.

Nov. 14, 2002.

Before CLAY and KRUPANSKY, Circuit Judges; and GWIN,* District Judge.

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

## OPINION

GWIN, District Judge.

With this appeal, we examine whether the district court erred in granting the defendant's motion for judgment as a matter of law after a jury returned a verdict for the plaintiff in a railroad-crossing case. We affirm the district court for the reasons that follow.

In her appeal, the plaintiff Sharon Ludwig argues that sufficient evidence existed to deny the district court's grant of judgment to defendant. The plaintiff also challenges the district court's refusal to instruct the jury consistent with the Restatement of Torts 2d § 443 & 444. In seeking a new trial, the plaintiff further alleges that federal law does not preempt her claims of excessive speed and hazardous characteristics of the railroad-crossing because there were specific individual hazards at the crossing. Additionally, the plaintiff-appellant argues the district court erred when it allowed evidence of a general release executed by the plaintiff in a claim against the driver of the vehicle involved in the train collision. Finally, the plaintiff says the district court erred in refusing to allow her claim for punitive damages.

## I. PROCEDURAL BACKGROUND

In this diversity action Plaintiff Sharon Rowan Ludwig ("Ludwig"), sued Defendant Norfolk Southern Railway Company ("Norfolk Southern"), for the wrongful death of her son, Seth Rowan. Rowan died on August 19, 1994, when a Norfolk Southern train struck the car carrying Rowan as a front-seat passenger.

After Seth Rowan's death, Ludwig sued the parents of Adam Randles, the fifteen year old boy driving the vehicle that collided with the train. Randles had only a learner's permit at the time of the accident. Ludwig also made claims against Norfolk Southern.

Ludwig and Adam Randles' parents agreed to arbitrate Ludwig's claim for the wrongful death of Seth Rowan. The arbitration panel found that Adam Randles was 85% negligent and Rowan was 15% negligent for riding with an underage driver. Ludwig collected $520,347.16 in damages from the Randles' insurance carrier, State Farm Insurance. In receiving payment of the arbitration award, Ludwig signed a general release for all claims relating to the accident.

In Ludwig's case against Norfolk Southern, the railroad moved for summary judgment, arguing that the general release that Ludwig signed freed Norfolk Southern from liability. Norfolk Southern also sought judgment on the grounds that the parties excluded Norfolk Southern from participating in the arbitration proceeding. Norfolk Southern also claimed that statements Ludwig gave in other proceedings judicially estopped her from asserting that Norfolk Southern was negligent. In those statements, Ludwig attributed Seth Rowan's death only to the negligence of Adam Randles. The district court denied this motion for summary judgment, finding genuine issues of material fact existed about whether Ludwig intended to release Norfolk Southern.

Norfolk Southern then filed a motion for partial summary judgment. The defendant argued that federal law preempted the plaintiff's claims against Norfolk Southern for excessive speed and inadequate warning devices. The district court partially granted the summary judgment motion. The district court found the jury should decide if construction in the vicinity of the Forrest Hill–Irene crossing at the time of the accident created a "specific, individual hazard." If the construction at the crossing was a "specific, individual hazard", the federal law would not preempt state law claims. *CSX Transp., Inc. v. Easterwood,*

507 U.S. 658, 661, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).**

The district court tried the case on the sole issue of whether the construction in the vicinity of the Forrest Hill–Irene crossing at the time of the accident created a "specific, individual hazard." At the close of evidence, Norfolk Southern moved for judgment as a matter of law, which the district court denied. After trial, the jury returned a verdict in favor of the plaintiff, finding that Norfolk Southern was 3% negligent. The jury awarded damages in the amount of $75,000. After the jury verdict for the plaintiff, Norfolk Southern again moved for judgment as a matter of law. The court granted this motion. The plaintiff timely appealed.

After a careful review of the record and the evidence, we find no reason to disturb the trial court's rulings. The decision of the district court is affirmed.

## II. FACTUAL BACKGROUND

On August 19, 1994, Adam Randles, a fifteen year old with only a learner's permit, operated a Ford Explorer without adult supervision. Two other minors joined Seth Rowan as passengers.

During Randles operation of the Explorer, it approached the railroad-crossing at Forrest Hill–Irene Road. As Randles' Explorer arrived at the grade of the railroad crossing a Norfolk Southern train approached. Randles stopped in front of the tracks in a position outside the zone of danger. Inexplicably, he suddenly accelerated onto the track immediately in front of the train. The Norfolk Southern train hit the Explorer, killing Rowan. In trying to explain why Randles accelerated into the train's path from a stopped position outside the zone of danger, the jury received testimony that the inexperienced Randles may have been trying to put the Explorer into reverse before he accelerated into train's path.

Immediately prior to the collision, the train had been traveling about 44 miles per hour. When the train engineer noticed the Explorer on the tracks, he applied the engineer's emergency break to avoid the

---

** To aid in the achievement of these goals, the Act specifically directs the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings. 45 U.S.C. § 433. In addition, the Secretary is given broad powers to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety ...." § 431(a). The pre-emptive effect of these regulations is governed by § 434, which contains express saving and pre-emption clauses. Thus, the States are permitted to "adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement."

Even after federal standards have been promulgated, the States may adopt more stringent safety requirements "when necessary to eliminate or reduce an essentially local safety hazard," if those standards are "not incompatible with" federal laws or regulations and not an undue burden on interstate commerce.

FN2. The section reads:

" § 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

collision. The railroad-crossing had flashing lights indicating an approaching train. The crossing had no gate. At trial, Plaintiff Ludwig showed evidence that construction near the crossing obscured the typical white line used to show drivers where to stop. Also at trial, evidence suggested the boys in the Explorer were listening to music and could not hear the train whistle.

Construction had been on-going in the area surrounding the Forest Hill–Irene railway-crossing. The Federal Highway Administration ("FWHA"), the Tennessee Department of Transportation, and the Tennessee Secretary of Transportation approved funding for an improvement and upgrade of the warning devices at the Forrest Hill–Irene crossing. They used approximately $50,000 in federal funds to pay for this project.

## III. DISCUSSION

### A. Judgment As a Matter of Law

#### 1. Standard of Review

A trial court properly grants judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1). Review on issues concerning judgment as a matter of law are conducted *de novo. Miller, Inc. v. Palazzetti, Inc.,* 270 F.3d 298, 322 (6th Cir.2001). The reviewing court shall apply the same standard as the district court, viewing the evidence in the light most favorable to the non-moving party. *Id.*

#### 2. Discussion

Ludwig brought suit against Defendant Norfolk Southern claiming negligence under Tennessee statutory and common law. The alleged negligence arises from claims that Norfolk Southern failed to maintain adequate warning devices at its railroad-crossing and that it conducted the train at excessive speeds. The district court granted the defendant's motion for summary judgment on these two issues of negligence because federal law preempted the plaintiff's claims.

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA") to promote safety in every area of railroad operations and reduce railroad related incidents. 49 U.S.C. § 20101. The FRSA authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103(a). Specifically, the Act charges the Secretary with "maintain[ing] a coordinated effort to develop and carry out solutions to the railroad grade crossing problem." 49 U.S.C § 20134(a). To prevent inconsistency in the laws across the country governing the railroads and to promote railroad safety the FRSA has a preemption clause:

> Laws, regulations and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. The U.S. Supreme Court has interpreted the above savings clause to refer to "specific, individual hazards." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

In this case, the district court properly found that federal law preempted state efforts to control warning devices. *See Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (holding that "once the FHWA approved [rail crossing warning devices upgrade project] the project and the signs were installed using federal funds, the federal standard for adequacy displaced the Tennessee statutory and common law address-

ing the same subject"). Similarly, the district court properly found that federal law preempted Ludwig's state-law speed claim because federal regulation governed the speed of Norfolk Southern's trains. *See CSX Transp. Inc., v. Easterwood,* 507 U.S. 658, 673–75, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

Ludwig's case proceeded on the plaintiff's claim that the railroad crossing created a "specific, individual hazard," which FRSA did not preempt. In its summary judgment opinion, the trial court ruled that no federal preemption existed if a "specific, individual hazard" caused the accident.

■ Although the jury returned a verdict in favor of Ludwig on the claims of negligence on the issue of a "specific, individual hazard," the district court judge entered a judgment in Norfolk Southern's favor. In its order granting judgment as a matter of law, the Court found that no rational jury could find that the crossing constituted a "specific, individual hazard." After a *de novo* review of the record, we affirm the decision of the district court.

If the evidence shows that the railroad crossing created a "specific, individualized hazard" then the plaintiff's claim is not preempted by federal law and Ludwig would be entitled to a jury verdict on this issue. Our review of the record causes us to find that insufficient evidence existed to prove a "specific, individualized hazard."

Almost all of the case law on "specific individual hazards" comes from district court opinions. A specific, individual hazard is a "discrete and truly localized hazard." *Seyler v. Burlington N. Santa Fe Corp.,* 102 F.Supp 2d 1226, 1236 (D.Kan. 2000). It "relates uniquely to the avoidance of a single, specific collision." *O'Bannon v. Union Pac. R.R. Co.,* 960 F.Supp. 1411, 1420 (W.D.Mo.1977).

The "specific, individualized hazard" exception seeks to keep local control over local issues, that is issues that are unique

to the particular site. The exception does not apply to issues that are present at many, if not most, sites. Courts have rejected the following conditions as "specific, individual hazards": "lightning," *Herriman v. Conrail, Inc.,* 883 F.Supp. 303, 307 (N.D.Ind.1995), "obstruction of view by railcars," *Earwood v. Norfolk S. Ry. Co.,* 845 F.Supp. 880, 888 (N.D.Ga.1993), and "nearby chemical plants," *Bowan v. Norfolk S. Ry. Co.,* 832 F.Supp. 1014, 1017–18 (D.S.C.1993).

Here, Ludwig says that dirt from the construction near the crossing may have obscured road markings. She says that the dirt may have affected Randles's ability to see the white line used to show drivers where to stop. But construction at intersections is common and present around the country at many locations. Construction in the vicinity of the crossing is not the unique circumstance that the "specific, individualized hazard" exemption covers.

Our review of the evidence shows that Ludwig never demonstrated that the construction activity at the railroad crossing was a "specific, individual hazard." The construction was not "discrete" or localized. In fact, there was no evidence indicating that construction activities occurred at the time of the accident. Plaintiff Ludwig shows no evidence that the construction obstructed the view of the driver of the Explorer.

The plaintiff argues that a combination of conditions such as: no marker to highlight a safe stopping point for cars, the construction, dirt on the road-way, and the lack of a safety-gate, led to a "specific, individual hazard." But there is no evidence in the record to support this contention. The plaintiff relies on the testimony of Dr. Rudolf Mortimer, an expert in industrial and experimental psychology, who testified about human factors. However,

Dr. Mortimer's testimony did not address the issue of whether the construction caused a "specific, individual hazard". Two eye witnesses testified about their observations at the scene of the accident and neither asserted that the construction caused the accident or that the construction distracted the driver of the Explorer. In fact, the driver's own testimony did not indicate that he was distracted by the construction or that it caused the accident. No real evidence existed that a reasonable trier of fact could use to reach the conclusion that the construction was a "specific, individual hazard", even when the evidence is viewed in a light most favorable to the plaintiff. Therefore, we affirm the district court's decision to grant judgment as a matter of law.

**B. The District Court Failed to Instruct the Jury on Restatement of Torts 2d § 443 & 444**

### 1. Standard of Review

Jury instructions are reviewed as a whole and the reviewing court must determine whether the instructions adequately inform the jury of relevant considerations and provide a legal basis for the jury to reach its decision. *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir.1996). The reviewing court may reverse the district court only if it finds that the jury instructions viewed as a whole were confusing, misleading, or prejudicial. *Id.*

### 2. Discussion

█ The district court instructed the jury concerning superseding causation. The court's instruction read as follows:

A cause of an injury is not a legal cause when there is a superseding cause. For a cause to be a superseding cause, all of the following elements must be present:
1. The harmful effects of the superseding cause must have occurred after the original negligence;

2. The superseding cause must not have been brought about by the original negligence;
3. The superseding cause must actively work to bring about a result which would not have followed from the original negligence, and
4. The superseding cause must not have been reasonably foreseeable by the original negligent party.

If you find by a preponderance of the evidence that a person, whether a party or not, was negligent and that the negligence was a proximate or legal cause of the injury or damage for which a claim was made, you have found that person to be at fault.

Here, the instructions were clear, concise and met the *Innes* standard of "adequately inform[ing] the jury of relevant considerations and ... a legal basis [for] ... its decision." *Id.*

█ The plaintiff claims that the district court erred because it refused to give an instruction on negligent causation from the Restatement of Torts 2d § 443 & 444. The plaintiff argues that an instruction from the Restatement would have helped her case more than the instruction that the district court gave. However, this is not the standard by which we review jury instructions. We do not reverse based on improper jury instructions unless those instructions are "confusing, misleading, or prejudicial." The plaintiff fails to explain or even allege that the trial court's instructions fit within any of these error factors. After our *de novo* review, we find no reason to disturb the judgment below based on this issue.

As important, Plaintiff Ludwig does not show that Tennessee has adopted the Restatement of Torts 2d § 443 & 444. As such, she makes no showing that the district court misstated applicable Tennessee

law. The plaintiffs fails to show error in the trial court's failure to instruct the jury regarding Restatement of Torts 2d § 443 & 444.

### C. Evidence Concerning Excessive Speed and Hazardous Characteristics of the Railroad Crossing

■ The plaintiff claims that the district court erred in not allowing her to present proof of or argue excessive speed or hazardous construction characteristics of the railroad-crossing. This is a mixed question of law and fact. Here, the trial court determined whether FRSA preempted this evidence or whether such evidence was allowable to prove a "specific, individual hazard". Mixed questions of fact and law are reviewed *de novo* by the appellate court. *Clevenger v. Oak Ridge School Board*, 744 F.2d 514, 516 (1984). After a *de novo* review of the record, we find no basis to disturb the judgment below on this issue.

The district court ruled that the federal law preempted plaintiff's claims of general negligence with regard to inadequate warning devices at the railroad crossing and conducting the train at excessive speeds. The district court then held that evidence regarding warning devices and evidence of excessive speed would not be admissible to prove the "specific, individual hazard" claim. The district court reasoned that this type of evidence was closely related to claims preempted by federal law. The district court believed that this type of evidence was not relevant to prove the plaintiff's remaining claim of "specific, individualized hazard." We agree. As we already noted, "specific, individual hazards" are "discrete" and "localized". We agree with the trial court that it is hard to contemplate how evidence of excessive speed could be relevant to proving a "discrete" and "localized" hazard, especially since federal law has already preempted state law in the area of train speeds.

Likewise, federal law has already preempted state law in the area of inadequate warning devises.

The plaintiff seeks to give evidence of excessive speed and hazardous characteristics of the crossing to show a "specific, individual hazard." However, this combination of factors is not what Congress intended when it created the "specific, individual hazard" exception to the FRSA. *O'Bannon*, at 1420–21. A "specific, individual hazard" must be the sort of aberration that the Secretary could not have practically considered when determining train speed limits and warning device regulations under the FRSA. *Id.* As other courts have noted, Congress "made it abundantly clear that [the] savings clause is to be narrowly construed." *Bowman*, at 1018. We reject the argument that allowing the plaintiff to present evidence of excessive train speed or hazardous characteristics would have helped prove her claim of "specific, individual hazard." Thus we affirm the decision of the trial court to exclude such evidence.

### D. Proof of the General Release

■ The plaintiff claims on appeal that the trial court erred when it allowed the defendant to introduce evidence that the plaintiff signed a general release after the accident. This Court need not reach the merits of that issue because the plaintiff waived her right to appeal this issue.

At trial, the plaintiff introduced the release into evidence before the defense had a chance to do so. The plaintiff described her strategy: "go ahead and present it [the release] as a part of her case in chief where it could be presented in proper context." In short, the plaintiff wanted to explain her side of the events surrounding the release and its meaning before the defendants had a chance to introduce it into evidence.

However, the U.S. Supreme Court has held that a defendant who preemptively introduces evidence on direct examination may not challenge the admission of such evidence on appeal. *See generally Ohler v. US*, 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826, 832 (2000). In *Ohler*, the district court granted the government's motion *in limine* to admit evidence of a prior felony conviction under the Federal Rules of Evidence. *Id.* 146 L.Ed.2d at 829. Ohler tried to preempt the government's presentation by testifying about the conviction on direct examination. The Court subsequently convicted Ohler and Ohler assigned the admission of evidence of the conviction as error. Upon review, the Court held, "generally a party introducing evidence cannot appeal that the evidence was erroneously admitted." *Id.* 146 L.Ed.2d at 830. The Court pronounced that the defendant's strategy in Ohler amounted to an attempt to "short-circuit [the] decisional process by offering the conviction herself (and thereby removing the sting) and still preserve its admission as a claim of error on appeal." *Id.* 146 L.Ed.2d at 832. The plaintiff's introduction of the release into evidence, under the Ohler rule, effectively waived her right to appeal the admission of the evidence.

### E. Punitive Damages

Having found that the trial court properly granted judgment as a matter of law for the defendant on the claims of negligence against the defendant, we need not reach the issue of punitive damages.

### III. CONCLUSION

After reviewing the record and applicable authority, we hold that the district court did not err on any of the grounds raised by the plaintiff. Therefore, the judgment of the Western District Court of Tennessee, in case 01–5525 is thereby AFFIRMED.

KRUPANSKY, Circuit Judge. I concur in the result only.